## A95A2667. BRINSON v. MARTIN et al.

(469 SE2d 537)

RUFFIN, Judge.

Robert Brinson filed suit in the Superior Court of Cobb County against his former employer, Woodmen of the World Life Insurance Society ("Woodmen"), a Nebraska-based business, and four Woodmen employees (collectively "Martin"), all Georgia residents. Brinson's complaint alleged causes of action against Woodmen for breach of contract and invasion of privacy, and against Martin for interference with economic relations and unjust enrichment. The trial court dismissed Brinson's complaint due to improper venue, and Brinson appeals. For reasons which follow, we affirm.

Woodmen hired Brinson as a field representative to solicit and sell insurance in 1972, and he remained associated with Woodmen until Woodmen terminated him shortly after he filed this complaint in 1995. Brinson's employment with Woodmen was governed by a written "Full-Time Field Representative Contract" ("field representative contract"). The field representative contract provides in part: *"12. Venue and Construction. The Society [Woodmen] and Field Representative [Brinson] agree that this contract is to be construed according to the laws of the State of Nebraska and that the exclusive venue for the pursuit of any legal proceeding or remedy arising out of this contract shall be Douglas County, Nebraska."*

Based on the forgoing venue provision, the trial court concluded the only proper venue for Brinson's complaint was in Douglas County, Nebraska. Accordingly, the court dismissed Brinson's complaint in its entirety.

1. Brinson contends the trial court erroneously granted Woodmen's motion to dismiss for improper venue because the venue clause is unreasonable, unjust, overreaching, and unenforceable, in that it violates Georgia public policy. Before we address this argument, however, we must first examine the field representative contract's choice of law provision to determine whether Georgia or Nebraska law governs the venue issue.

(a) " 'The traditional method of resolving choice-of-law issues is through a tripartite set of rules, which are lex loci contractus, lex loci delicti, and lex fori. . . . Under the rule of lex fori, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought. (Cit.)' [Cit.]" *Lloyd v. Prudential Securities*, 211 Ga. App. 247, 248 (1) (438 SE2d 703) (1993).

Contract provisions and statutes governing the place of bringing a suit do not affect the parties' substantive rights, but rather are a matter of procedure. See *Harry S. Peterson Co. v. Nat. Union &c. Co.*, 209 Ga. App. 585, 588 (3) (a) (434 SE2d 778) (1993). Thus, although under its own terms, the field representative contract dictates

that it is to be construed according to Nebraska law, because questions of venue are procedural, the rule of lex fori demands a different result. "[W]e are aware of no precedent in this state, standing for the proposition that a choice-of-law provision, if otherwise valid, controls the remedy and procedure to be applied in the forum state as well as the substantive law of the case." *Lloyd*, supra. Accordingly, we conclude that Georgia law governs the issue of venue in this case. Id.

(b) "[Brinson] relies on *Fidelity &c. Co. of Maryland v. Gainesville Iron Works*, 125 Ga. App. 829 (189 SE2d 130) (1972) and *Cartridge Rental Network v. Video Entertainment*, 132 Ga. App. 748 (209 SE2d 132) (1974), for the proposition that all venue selection contract clauses are against Georgia public policy and will not be enforced by Georgia courts. However, both of these cases deal[t] with intrastate transactions[,]" and the complaints were premised on violations of a specific state insurance law with its own venue provision. *Harry S. Peterson Co.*, supra at 590. In cases like this, however, where no Georgia law specifically governs venue, and where more than one state and its citizens are involved, " 'such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances. . . . This approach is substantially that followed in other common-law countries including England. It is the view advanced by noted scholars and that adopted by the Restatement of the Conflict of Laws. It accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons of American contractors who seek business in all parts of the world.' . . . [Cit.]" Id.

We do not find that enforcement of the venue clause is unreasonable under the circumstances of this case. Although Brinson asserts that he had no notice of the clause and that it was the result of the disparate bargaining powers between the parties, the record does not support either assertion.

First, the record does not support Brinson's argument that he had no notice of the clause because it was buried in a 45-page printed form contract. Rather, the field representative contract consists of six pages covering fourteen enumerated paragraphs (the remaining pages attached to the contract consist of various compensation schedules). The table of contents specifically refers to paragraph 12 as "Venue and Construction." The title to paragraph 12 as it appears within the body of the contract is in large, capitalized, boldface print and no different from the title headings of the other paragraphs in the contract. Under these circumstances, we must conclude that the clause was not hidden. Accordingly, Brinson's contention "that he had no specific knowledge of the clause is of no moment." *Stephens v. Entre Computer Centers*, 696 FSupp. 636, 641 (N.D. Ga. 1988). Moreover, " 'one who signs a contract is presumed to know its contents. . . .' "

*Intl. Indem. Co. v. Smith*, 178 Ga. App. 4, 5 (1) (342 SE2d 4) (1986).

Likewise, the record does not support Brinson's assertion that there was a manifest disparity of bargaining positions. Although Brinson cites his affidavit in support of this contention, there is nothing in the affidavit addressing the relative bargaining positions of Woodmen and Brinson. Moreover, there is nothing in the record indicating that Woodmen obtained Brinson's assent to the forum selection clause by fraud or overreaching, or that Brinson did not retain the option of refusing to sign the contract containing the clause. See id.; *Carnival Cruise Lines v. Shute*, 499 U. S. 585, 595 (111 SC 1522, 113 LE2d 622) (1991). Accordingly, this argument is without merit.

Because Brinson, as the party challenging the clause, has failed to show that its enforcement would be "unreasonable" under the circumstances of this case, the trial court did not err in dismissing his complaint against Woodmen for improper venue. See *Harry S. Peterson Co.*, supra.

2. Brinson also contends the court erred in dismissing his claims against Martin. He argues that regardless of whether the venue clause is applicable to Woodmen, the clause would not apply to his claims against Martin for tortious interference with economic relations and unjust enrichment because those claims do not arise out of the contract and involve parties who were not signatories to the contract. Accordingly, he argues these claims should be adjudicated in Georgia.

This same argument was rejected by the court in *Stephens*, supra. In *Stephens*, the court reviewed authority from several other jurisdictions and concluded that because the claims against the other defendants arose directly or indirectly from a single contract connecting the plaintiffs with all the defendants, the other defendants were transaction participants entitled to rely on the forum selection clause. Id. at 638-640.

Although we are unaware of any Georgia appellate decision holding that transaction participants may also rely on forum selection clauses, we have held that such individuals may rely on contract arbitration clauses. In *Paine, Webber &c. v. McNeal*, 143 Ga. App. 579 (239 SE2d 401) (1977), the plaintiff sued both Paine Webber and an account representative for securities violations and fraud. Paine Webber moved to compel arbitration based on an arbitration clause in the contract between itself and the plaintiff. The trial court held that the arbitration clause did not apply to the account representative because he was not a signatory to the contract. We found that if the account representative could not rely on the clause, then the actions would likely be decided in separate forums, a result that we determined may " 'result in varying decisions, discreditable to the administration of justice.' [Cit.]" Id. at 582. We concluded "that the ends of justice are more nearly met by holding that [the nonsignatory] must be allowed

to participate in the arbitration. . . ." Id.

We believe the same considerations demand that Martin be permitted to rely on the forum selection clause in this case. First, despite Brinson's attempt to characterize his claims against Martin as falling outside the business relationship he had with Woodmen, it is clear from his complaint that the claims arose either directly or indirectly from his contract with Woodmen. Under these circumstances, we are persuaded that if Martin were not entitled to rely on the clause, separate actions would likely be brought, possibly resulting in varying decisions, inconsistent with the administration of justice. For these reasons, we conclude that the trial court did not err in ruling that Martin may rely on the forum selection clause in this case. We note, however, that we do not intend for this decision to apply to actions filed only against nonsignatories, where the same considerations may or may not be present.

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED MARCH 13, 1996.

*Decker & Hallman, Robert D. Feagin*, for appellant.
*Rogers & Hardin, Richard H. Sinkfield, Liane A. Schleifer*, for appellees.