A10A0597. MOON et al. v. CSA — CREDIT SOLUTIONS OF
AMERICA, INC.
(696 SE2d 486)

ANDREWS, Presiding Judge.

David and Glenda Moon, who reside in Georgia, entered into a contract in Georgia with CSA — Credit Solutions of America, Inc. (CSA), a Texas corporation, which provided for CSA to assist the Moons in negotiating or adjusting debts they owed to their creditors for less than the amount owed. The Moons sued CSA in Georgia claiming that the debt adjustment services CSA provided under the contract violated Georgia statutes specifically regulating the business of "debt adjusting" as set forth in OCGA § 18-5-1 et seq. The trial court granted CSA's motion to dismiss the Georgia suit on the basis that the contract contained a provision selecting Texas as the forum for any dispute regarding the agreement. The Moons appeal from this ruling, and for the following reasons we reverse.

At issue in the Moons' appeal is the applicability and validity of the forum selection provision and the related choice of law provision in the contract which state:

> Choice of Law and Jurisdiction. In the event of any dispute regarding this AGREEMENT including but not limited to service fees and costs, CLIENT and CSA agree that venue of resolution shall be in the county and city of Dallas, Texas. Both CSA and CLIENT agree that the laws of the State of Texas shall govern any disputes arising from this AGREEMENT.

In ruling that the forum selection provision was valid and required that the suit be brought in Dallas, Texas, the trial court found that the provision broadly applied to the Moons' claim that services CSA provided under the contract violated Georgia statutes regulating debt adjustment. The Moons contend that the forum selection provision does not apply in this case because their cause of action asserts a violation of the Georgia debt adjustment statutes, and therefore this dispute does not regard or arise from the agreement. We rejected a similar narrow construction of a contractual forum selection provision in *Brinson v. Martin*, 220 Ga. App. 638, 640 (469 SE2d 537) (1996). In that case, the forum selection provision in Brinson's employment contract stated that "the exclusive venue for

the pursuit of any legal proceeding or remedy arising out of this contract shall be Douglas County, Nebraska." Id. at 638. Brinson sued his employer (Woodmen of the World Life Insurance Society) for breach of contract and sued four Woodmen employees for tortious interference with economic relations and unjust enrichment. Id. at 638-640. We held that the tortious interference and unjust enrichment claims arose directly or indirectly from the contract and rejected Brinson's argument that the forum selection provision in the contract was not broad enough to apply to those claims. Id. at 640. "Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause [in the contract] governs the action." *Hugel v. Corp. of Lloyd's*, 999 F2d 206, 209 (7th Cir. 1993). In the present case, the trial court correctly held that the forum selection provision, which was applicable to "any dispute regarding this Agreement," applied to the Moons' claim that CSA violated a duty to conform the services it provided under the contract to the Georgia "debt adjustment" statutes.

The trial court erred, however, by holding that the forum selection provision, as applied, was valid under the present facts and required the Moons to bring their action in Dallas, Texas. Because Georgia is the forum state in the present action, the rule of lex fori requires the application of Georgia law to determine the validity of the forum selection provision, despite the fact that the contract also contains a choice of Texas law provision. *Brinson*, 220 Ga. App. at 638-639. Under Georgia law, a forum selection provision in a contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable under the circumstances. *Iero v. Mohawk Finishing Products*, 243 Ga. App. 670, 671 (534 SE2d 136) (2000). The contract also contains a related choice of law provision stating that "the laws of the State of Texas shall govern any disputes arising from this agreement." "[T]he law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *CS-Lakeview at Gwinnett v. Simon Property Group*, 283 Ga. 426, 428 (659 SE2d 359) (2008). If enforced, the choice of law provision would operate to require that Texas substantive law be applied to the Moons' claims against CSA. Texas has adopted statutory protections for consumers, like the Moons, who contract with debt adjustment or management services, like CSA. Tex. Fin. Code § 394.201 et seq. The Texas statutory scheme, however, provides no protection to the Moons, who reside in Georgia, because it defines a protected consumer as "an individual who resides in [Texas] and seeks a debt management service or enters a debt

management service agreement." Tex. Fin. Code § 394.202 (4).

It follows that, if enforced, the contract's forum selection and choice of law provisions requiring the Moons to bring their action before a Texas court applying Texas law would operate in tandem to deprive them of specific statutory protections set forth in OCGA § 18-5-1 et seq. relating to debt adjustment agreements. Because this would violate Georgia's public policy established in OCGA § 18-5-1 et seq. relating to debt adjustment agreements and encourage debt adjustment practices in Georgia contrary to that policy, the forum selection and choice of law provisions in the contract are invalid and unenforceable. *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (238 SE2d 368) (1977); *Iero*, 243 Ga. App. at 671-672. The trial court erred by dismissing the Moons' action.

*Judgment reversed. Doyle, J., concurs. Ellington, J., concurs specially.*

ELLINGTON, Judge, concurring specially.

While I agree with the majority's conclusion that the contract's forum selection and choice of law provisions violate Georgia's public policy and are, therefore, invalid and unenforceable, I respectfully disagree with the majority's conclusion that the trial court correctly held that the forum selection provision applied to the Moons' claim that CSA violated Georgia's debt adjustment statutes, OCGA § 18-5-1 et seq.

This Court's review of a trial court's ruling on a motion to dismiss is de novo. *Levy v. Reiner*, 290 Ga. App. 471, 472 (1) (659 SE2d 848) (2008). "Our role is to determine whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." (Punctuation and footnote omitted.) Id.

Viewed in this light, the record shows that, in 2004, the Moons were unable to pay their unsecured debts, so they contacted CSA, a Texas corporation that promoted itself via the internet as the "largest for-profit debt management company in the nation." CSA promised to assist debtors by negotiating with creditors on the debtors' behalf in an effort to reduce their debt. According to the complaint, CSA assured potential clients that, due to "its many years of experience [in debt reduction], its advanced technology, and its financial savvy, [it] can dramatically lower the client's bills, get the client out of debt in three years or less, and settle the debt for 50% or less." In exchange for its services, CSA required clients to pay the company fees equaling 15 percent of their entire debt load.

In May 2004, the Moons signed a client service agreement with

CSA; the contract stated as follows:

> In the event of any dispute regarding this AGREEMENT including but not limited to service fees and costs, CLIENT and CSA agree that venue of resolution shall be in the county and city of Dallas, Texas. Both CSA and CLIENT agree that the laws of the State of Texas shall govern any disputes arising from this AGREEMENT.

CSA then instructed the Moons not to talk to or pay their creditors. The Moons paid $868.15 to CSA over several months before cancelling the contract in December 2004. At that time, CSA had retained all of the money paid by the Moons instead of using some of the money to make payments to the Moons' creditors, and CSA had not contacted any of the creditors on the Moons' behalf or provided any other services to the Moons.

In March 2009, the Moons filed suit (individually and as named plaintiffs in a proposed class action) against CSA, alleging that the company violated Georgia's debt adjustment statutes, OCGA § 18-5-1 et seq. Specifically, the Moons alleged that CSA violated OCGA § 18-5-2[1] by charging excessive fees and violated OCGA § 18-5-3.2 (a)[2] by failing to disburse the funds it received from the Moons to the Moons' creditors within 30 days of receipt. The Moons sought damages in the amount allowed under the debt adjustment statutes.[3]

CSA responded to the complaint and moved to dismiss based upon the contract's forum selection provision. Following a hearing, the trial court granted the motion to dismiss.

The Moons contend that the trial court erred in dismissing their complaint because the complaint alleges that they were harmed when CSA violated Georgia's debt adjustment statutes and, thus, the

---

[1] OCGA § 18-5-2 provides as follows:
   In the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor. . . .

[2] Under OCGA § 18-5-3.2 (a), "[a]ny person engaged in debt adjusting shall disburse to the appropriate creditors all funds received from a debtor, less any fees authorized by this chapter, within 30 days of receipt of such funds."

[3] Under OCGA § 18-5-4 (b) (2),
   [a]ny person who engages in debt adjusting in violation of the provisions of Code Section 18-5-2 or subsection (a) of Code Section 18-5-3.2 shall . . . be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00. Such debtor shall have the right to bring a cause of action directly against such person for violation of the provisions of this chapter.

complaint was specifically authorized by OCGA § 18-5-4 (b) (2).[4] They argue that their claims are not based upon a breach of their contract with CSA and, in fact, that the claims are entirely independent of the contract. They contend, therefore, that the claims are not subject to standard contract defenses, such as the contract's forum selection provision.[5]

In response, CSA argues that the contract's forum selection clause, which refers to "any dispute regarding this agreement including but not limited to service fees and costs," is sufficiently broad to cover the claims asserted.

The plain language of OCGA § 18-5-4 (b) (2), however, specifically provides that debtors "shall have the right to bring a cause of action directly against [an individual or corporation] for violation of the provisions of [the debt adjustment statutes]." In their complaint, the Moons claim that CSA's actions in charging them fees totaling 15 percent of their indebtedness and in failing to disburse any funds to their creditors — whether or not such actions were allowed under the contract — violated Georgia's debt adjustment statutes. They also specifically sought the damages that are allowed under OCGA § 18-5-4 (b) (2). Thus, I agree with the Moons' arguments that their complaint asserts a cause of action based upon a violation of the debt adjustment statutes, not a breach of contract claim, and that the contract's choice of forum provision does not apply in this case. It follows that the Moons are authorized to maintain their suit against CSA in Georgia, pursuant to OCGA § 18-5-4 (b) (2), and that the trial court erred in dismissing the Moons' complaint.

Although the majority relies on *Brinson v. Martin*, 220 Ga. App. 638, 640 (469 SE2d 537) (1996), to support their position, *Brinson* is distinguishable from the instant case on both the facts and the law. *Brinson* involved a plaintiff who sued his former employer for breach of contract and invasion of privacy and also claimed that, while he was still employed by the company, four of the company's employees interfered with his economic relations and were unjustly enriched to his detriment. Id. This Court properly concluded that all of the

---

[4] See footnote 3, supra; see also generally *Attaway v. Tom's Auto Sales*, 144 Ga. App. 813, 815 (242 SE2d 740) (1978) (concluding that the Fair Business Practices Act of 1975, OCGA § 10-1-390 et seq., created a separate and distinct cause of action and that a consumer who is damaged by a violation of the Act has an independent right to recover under the Act, regardless of any other theory of recovery).

[5] See *Hornsby v. Phillips*, 190 Ga. App. 335, 338-339 (3) (378 SE2d 870) (1989) (the plaintiff's suit alleged that the defendants violated the Georgia Sale of Business Opportunities Act, OCGA § 10-1-410 et seq., by making certain material misrepresentations; because the plaintiff did not sue based upon a breach of the parties' contract, the defendants' contractual defenses were inapplicable, and the fact that the contract did not include the misrepresentations at issue was immaterial to the dispute).

plaintiff's claims arose either directly or indirectly from his employment contract and, therefore, the employees were entitled to rely upon the forum selection provision in the contract.[6] Id. at 641 (2).

Unlike the instant case, however, *Brinson* did not involve a claim for damages that was based upon violations of — and was specifically authorized by — Georgia consumer protection statutes. While there was a contract between the parties in this case, that contract was simply the vehicle CSA used *to extract exorbitant and illegal fees from the Moons in direct violation of those statutes*. Indeed, if all debt adjustment companies required that each of their clients sign a contract for their services, and all of those contracts contained clauses which required disputes "regarding this agreement" to be brought in another state, then, under the majority's analysis, the private civil remedies provisions of Georgia's debt adjustment statutes would be rendered meaningless. Because such a result would be contrary to the clear purpose of the statutes and would be inconsistent with the statutes' plain language, I respectfully disagree with the majority's decision on this issue.

DECIDED JUNE 22, 2010.

*Lewis, Stolz, Hurt, Frierson & Grayson, James W. Hurt*, for appellants.

*Blasingame, Burch, Garrard & Ashley, E. Davison Burch, Thomas F. Hollingsworth*, for appellee.

---

[6] This Court also based its decision on a concern that, if the employees were not entitled to rely on the clause, the plaintiff would likely bring separate actions against them, which could result in inconsistent decisions. Id. Consequently, it specifically noted that it did not intend for its decision "to apply to actions filed only against nonsignatories, where the same considerations may or may not be present." Id.