A11A0749. BUNKER HILL INTERNATIONAL, LTD. et al.
v. NATIONSBUILDER INSURANCE SERVICES, INC. et al.
(710 SE2d 662)

ANDREWS, Judge.

In April 2006 and again in June 2008, Kevin Cunningham entered into employment agreements as an executive vice president of NBIS Construction and Transport Services, Inc. (NBIS), an Illinois company. The agreements contained identical covenants not to compete with NBIS and its affiliates and not to solicit the company's customers or employees. After Cunningham resigned from his position and joined Bunker Hill International, Ltd., a Georgia company, Cunningham and Bunker Hill brought this action for a declaration that the restrictive covenants were unenforceable under Georgia law. NBIS moved to dismiss on the ground that the forum selection and choice-of-law provisions in the contract required Cunningham to litigate his claim in Illinois, and the trial court granted the motion. On appeal, Cunningham repeats arguments made below that he is entitled to litigate his claim in a Georgia court because the covenants at issue contravene Georgia public policy. We

agree and reverse.

The record shows that Cunningham began working for the predecessor of NBIS, an insurance underwriter for heavy equipment, in April 2006, at which time he signed the first version of the employment agreement at issue. Soon afterward, NBIS asked Cunningham to move to Georgia for the purpose of overseeing its Atlanta operations. In July 2006, Cunningham agreed and moved to Atlanta. In June 2008, Cunningham signed an amended agreement. Cunningham's Illinois counsel "crafted" the amended agreement, and Cunningham insisted that NBIS accept the parties' original version of the covenants without which, as he said, he would not sign the new document.

The amended agreement contained the following noncompetition provision:

> (a) During your employment, without the prior written consent of the Company, you shall not, directly or indirectly, accept employment or compensation from, or perform services in any material respect and of any nature for, any business enterprise other than on behalf of the Company and its affiliates.

> (b) You understand and agree that you have specialized knowledge and experience related to the affairs and business of the Company as well as numerous contacts in the industry in which the Company [and its successors and affiliates] operate. You further understand that if you were to compete against the Company, . . . the Company . . . would suffer serious harm and substantial damage. Consequently, *for a period commencing on the date hereof and ending two (2) years after the date hereof*, you shall not, directly or indirectly, . . . own or have an ownership interest in, manage, operate, control, render services or advice to, or otherwise be associated or affiliated with or employed or engaged by any Person that conducts or plans to conduct a business that is competitive with the business of the Company. . . .

(Emphasis supplied.) The same clause provided that for two years after Cunningham left NBIS, he could "act solely as a retail producer . . . (but not as a manager, underwriter, [or] employee of an insurance company . . .)" of various types of insurance, including those underwritten by NBIS.

The agreement also included a nonsolicitation provision that "for a period commencing on the date hereof" and ending "two years after the date you cease to be an employee of the Company,"

Cunningham would not

> (i) induce or attempt to induce any employee . . . or other person that has a commercial relationship with [NBIS] . . . to leave the employ of, or otherwise alter the level of service provided to, or change the relationship with [NBIS], or (ii) hire or offer . . . any employment of compensation to any employee of [NBIS]. . . .

For the same period, Cunningham also could not "produce or seek to produce insurance from" or "derive compensation of any kind from, or otherwise establish a commercial relationship with, any now existing employee or customer of [NBIS and its affiliates], . . . or any of the foregoing that may come into existence on any date on which you were an employee of" NBIS or its affiliates.

The agreement contained the following language concerning the parties' chosen forum and law:

> This Agreement and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois. The parties agree that any disputes regarding the rights of the parties under this Agreement or the enforceability of this Agreement, whether in law or equity, shall be litigated in either the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois. The parties consent and submit to the jurisdiction and venue of such courts and agree to waive and will not assert defenses of lack of jurisdiction or improper venue in any such action filed in either of these courts.

After Cunningham expressed his dissatisfaction with the direction of NBIS, he offered the company a buyout, which was rejected. He resigned from NBIS on May 21, 2010, and began working for Bunker Hill on May 22. This litigation followed.

The question before us is whether the forum selection clause in the employment agreement between Cunningham and NBIS was enforceable such that the trial court properly granted NBIS's motion to dismiss this Georgia action.[1]

---

[1] Because the agreement at issue was entered into in 2008, we apply the law of restrictive covenants as it existed before the November 2010 ratification of an amendment to the Constitution of Georgia adopting OCGA § 13-8-2.1 (a) into law. See *Cox v. Altus Healthcare &c.*, 308 Ga. App. 28, 30 (2) (706 SE2d 660) (2011).

"Under the rule of lex fori, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought." (Punctuation omitted.) *Brinson v. Martin*, 220 Ga. App. 638 (469 SE2d 537) (1996). Specifically, and although the contract at issue here specifies that the contract should be construed according to Illinois law, the question of venue is a procedural one to which Georgia law applies. Id. at 638-639 (applying Georgia law to the questions of proper venue even when the contract at issue contained forum-selection and choice-of-law provisions that Nebraska law should apply).

As this Court has held, forum selection clauses "are prima facie valid and should be enforced unless the opposing party shows that such enforcement would be unreasonable under the circumstances." *Iero v. Mohawk Finishing Products*, 243 Ga. App. 670, 671 (534 SE2d 136) (2000), citing *The Bremen v. Zapata Off-Shore Co.*, 407 U. S. 1 (92 SC 1907, 32 LE2d 513) (1972).

> To invalidate such a clause, the opposing party must show that trial in the chosen forum will be so inconvenient that he will, for all practical purposes, be deprived of his day in court. A freely negotiated agreement should be upheld absent a compelling reason such as fraud, undue influence, or overweening bargaining power.

(Punctuation and footnotes omitted.) *Iero*, 243 Ga. App. at 671.

A forum-selection or choice-of-law provision may also be invalid, however, where the clause "contravenes 'a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision.' " *Iero*, 243 Ga. App. at 671, quoting *The Bremen*, 407 U. S. at 15; see also *CS-Lakeview at Gwinnett v. Simon Property Group*, 283 Ga. 426, 428 (659 SE2d 359) (2008) (a choice-of-law provision may be held unenforceable if the "application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state"). Thus we have recently invalidated two forum-selection clauses where the contracts at issue violated public policy, although both of these cases involved statutory rather than judicial expressions of such policy. *Walker v. Amerireach.com*, 306 Ga. App. 658, 660 (1) (703 SE2d 100) (2010) (reversing dismissal of complaint where plaintiff's claims were based on a statutory violation and thus the contractual defense of a forum-selection clause did not apply) (cert. granted, *Amerireach.com v. Walker* (Case No. S11G0417, March 7, 2011)); *Moon v. CSA — Credit Solutions of America*, 304 Ga. App. 555 (696 SE2d 486) (2010) (physical precedent only).

Given the absence of evidence of "fraud, undue influence, or

overweening bargaining power" as between the parties before us, Cunningham can succeed in invalidating the forum-selection clause at issue only if he can show that (a) at least one of the covenants violate Georgia public policy and (b) such a covenant would likely be enforced against him by an Illinois court. Only if these conditions are met could we conclude that an Illinois venue for this dispute would deprive Cunningham of a meaningful opportunity to argue that the covenants were void, thus doing damage to both him and the Georgia public policy against restraint of trade. See *Iero*, 243 Ga. App. at 671 (to contravene public policy, forum selection clause must "be damaging to the forum itself, not simply damaging to the litigants because of an unfavorable law in the selected forum").

(a) "Restrictive covenants in employment contracts are in partial restraint of trade and are enforceable only if strictly limited in time and territorial effect and are otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." (Citation and punctuation omitted.) *Fuller v. Kolb*, 238 Ga. 602, 603 (234 SE2d 517) (1977). Specifically, a noncompete covenant without any territorial limitation is unenforceable under Georgia law because it provides inadequate notice of its extent to the ex-employee — a fault exacerbated in the case before us by the agreement's bar on dealings between Cunningham and entities which were NBIS clients at any time during his employment there. See id. at 604 (noting that a restriction on the ex-employee's dealings with clients who had been such for a year before employee's departure made the noncompete covenant at issue more onerous). As such, the covenants at issue here are void. Id. at 603-604 (voiding noncompete and nonsolicitation provisions, and disapproving prior precedent "insofar as it intimates that a restrictive covenant in an employment contract is enforceable without an explicit territorial limitation").

(b) By contrast, Illinois courts have struck down only noncompete covenants so broad as to bar an ex-employee's dealings with "any existing *or future* customer" of the employer, "from and after the date of execution" of the agreement. *Eichmann v. Nat. Hosp. &c. Svcs.*, 308 Ill. App. 3d 337, 340 (719 NE2d 1141) (1999). Illinois courts take the view that "as the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases." (Citation and punctuation omitted.) Id. at 345. Only when a covenant lacks "*both* a geographic limitation and any qualifying language concerning the particular customers to which it applies," then, will it be found unreasonable under Illinois law. (Emphasis in original.) Id. at 345.

Thus the Illinois Court of Appeals has recently sustained a

noncompete covenant containing no territorial limitation "where the purpose of the restriction was to protect the employer from losing customers to a former employee who, by virtue of his employment, gained special knowledge and familiarity with the customers' requirements." *Steam Sales Corp. v. Summers*, 405 Ill. App. 3d 442, 459 (937 NE2d 715) (2010). In holding the covenant enforceable, the *Steam Sales* court looked to extrinsic evidence that the employer's territory was itself geographically limited. Id.

The noncompete covenant before us notes that Cunningham had "specialized knowledge and experience related to the affairs and business of the Company as well as numerous contacts in the industry," meaning that an Illinois court would likely sympathize with an employer seeking to restrain an employee from making use of such knowledge and experience in his new endeavor. See *Steam Sales*, 405 Ill. App. 3d at 459-460 (finding covenant reasonable and enforceable). The covenants before us are also temporally limited, whereas the covenants struck down in *Eichmann* were "both temporally and geographically unlimited." 308 Ill. App. 3d at 344.

(c) Cunningham has thus shown both that the noncompete and nonsolicitation provisions are unenforceable in Georgia and that at least one of them would likely be enforced in an Illinois court.

Georgia courts do not edit or "blue-pencil" employment agreements in order to salvage some provisions when others have been found void. *Advance Technology Consultants v. RoadTrac, LLC*, 250 Ga. App. 317, 320 (551 SE2d 735) (2001). It follows that the agreement's forum-selection provision is void because its application would likely result in the enforcement by an Illinois court of at least one covenant in violation of Georgia public policy. The trial court therefore erred when it granted NBIS's motion to dismiss this action.

*Judgment reversed. Phipps, P. J., and McFadden, J., concur.*

DECIDED MAY 5, 2011.

*Jackson & Lewis, Brandon M. Cordell, C. Todd Van Dyke, Robert W. Capobianco*, for appellants.

*Lewis, Brisbois, Bisgaard & Smith, John C. Patton, Thomas C. Grant*, for appellees.