[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15261
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:11-cv-00567-SCJ

LOUIS DOUGLAS,

                                                    Plaintiff-Appellee,

versus

JOHNSON REAL ESTATE INVESTORS, LLC,
a Massachusetts Limited Liability Company,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 27, 2012)

Before TJOFLAT, EDMONDSON, and FAY, Circuit Judges.

PER CURIAM:

Johnson Real Estate Investors ("Johnson") appeals the district court's denial of its motion to dismiss and compel arbitration in the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), action that Louis Douglas filed against Johnson. On appeal, Johnson argues that the district court erroneously found that Johnson's promise to arbitrate was illusory. For the reasons set forth below, we affirm the denial of the motion to dismiss.

I.

On June 17, 2010, Douglas, who was at the time employed by Johnson, signed a Mandatory Dispute Resolution Agreement ("MDRA"). Under the MDRA, Johnson and Douglas agreed to resolve employment disputes through binding arbitration "in accordance with Johnson's Mandatory Dispute Resolution Policy (as set forth in the Johnson Employee Handbook)." The MDRA stated that the consideration for the agreement was Douglas's continued employment with Johnson and Johnson's mutual agreement to arbitrate. The MDRA contained a severability clause as well as a choice of law provision specifying that it was governed by Massachusetts law. Finally, the MDRA stated that it "contain[ed] the entire and only agreement between [Douglas] and Johnson respecting the subject matter hereof, and no modification shall be binding upon [Douglas] or Johnson unless made in writing and signed by an authorized representative of Johnson."

2

In the employee handbook, Johnson reserved the right to "at any time, change, revise, supplement, discontinue, or rescind any or all of such conditions, policies, benefits and procedures or any other provision of this Handbook from time to time, as it deems necessary or appropriate in its sole discretion, with or without notice to employees." The handbook stated that it was not an employment contract. The Mandatory Dispute Resolution Policy in the handbook stated that Johnson and its employees mutually agreed to resolve disputes in accordance with the policy as a condition of continued employment. Under the policy, if Johnson and an employee were unable to resolve a dispute through informal procedures, then Johnson or the employee could submit the claim to arbitration. The Mandatory Dispute Resolution Policy contained a severability clause.

On June 17, 2010, Douglas signed a receipt acknowledging that he had received and read the handbook and agreed to comply with the handbook. According to the receipt, Douglas understood that the handbook could be modified, "in writing, at any time at the sole discretion of Johnson, with or without prior notice to [Douglas] and without [Douglas's] consent." Douglas also understood that the handbook was not a contract of employment.

After being terminated from his employment at Johnson, Douglas filed a complaint alleging that his rights under the ADEA, 29 U.S.C. § 623(a), had been

3

violated. Johnson filed a motion to dismiss, asking the district court to dismiss the lawsuit and compel arbitration.

In response to the motion to dismiss, Douglas argued that Johnson reserved the right to unilaterally modify the MDRA and the Mandatory Dispute Resolution Policy in the employee handbook, which rendered Johnson's promises in those documents illusory and unenforceable.

Johnson replied that the MDRA was silent as to Johnson's right to unilaterally modify the agreement, but that the requirement that changes be made in writing implied that notice to the other party was also required. Therefore, the agreement was not illusory and was binding and enforceable. Johnson also argued that Douglas had improperly relied on Georgia law in his response. The MDRA specified that Massachusetts law governed the interpretation of the contract.

The court denied Johnson's motion to dismiss. The court found that Johnson's agreement to arbitrate was illusory. The MDRA relied upon the employee handbook to detail the arbitration procedures to be used should a dispute arise. Because the employee handbook allowed Johnson to unilaterally modify the arbitration procedures without notifying Douglas, the agreement to arbitrate was illusory and invalid.

II.

4

We review a district court's denial of a motion to stay proceedings and compel arbitration *de novo*. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1193 n.1 (11th Cir. 2008). We generally do not consider arguments not raised before the district court. *Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011). "Judicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below." *Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) (quotation omitted).

A contract containing an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A]rbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (quotation omitted). "[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). As with contracts generally, courts must enforce arbitration agreements "according to their terms." *AT&T Mobility LLC*, 563 U.S. at ___, 131 S.Ct. at 1745. Under the final clause of § 2, however, "agreements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.*, 563 U.S. at ___, 131 S.Ct. at 1746 (quotation omitted). An arbitration agreement may not be

5

invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

In Georgia, a choice of law provision in a contract is enforceable unless applying that law "would be contrary to the public policy or prejudicial to the interests of this state." *Moon v. CSA-Credit Solutions of Am., Inc.*, 696 S.E.2d 486, 488 (Ga. Ct. App. 2010) (quotation omitted). In Massachusetts, several factors are considered to determine whether two documents will be read as a single, integrated contract: "simultaneity of execution, identity of subject matter and parties, cross-referencing, and interdependency of provisions." *Gilmore v. Century Bank & Trust Co.*, 477 N.E.2d 1069, 1073 (Mass. App. Ct. 1985). Under some circumstances, the terms of an employment manual may supply the terms of an employment contract. *Jackson v. Action for Bos. Cmty. Dev., Inc.*, 525 N.E.2d 411, 414 (Mass. 1988). In *Jackson*, the employer retained the right to unilaterally modify the manual's terms, which tended "to show that any 'offer' made by the [employer] in distributing the manual was illusory." *Id.* at 415. Based on that fact, as well as other circumstances, the court in *Jackson* concluded that the parties had not entered a contract based on the terms in the manual. *Id.* at 416.

The district court correctly denied Johnson's motion to dismiss. Massachusetts law governs the instant dispute because the arbitration agreement

6

contained a choice of law provision designating that Massachusetts law governed the interpretation of the MDRA. *See Moon*, 696 S.E.2d at 488. Johnson adequately alerted the district court to this provision when, in its reply, it rebutted Douglas's assertion that Georgia law applied by pointing to the choice of law provision and asserting that Massachusetts law governed the dispute.

Under Massachusetts law, Johnson's promise to arbitrate was illusory. *See Jackson*, 525 N.E.2d at 415-16. The MDRA stated that a modification was only binding if "made in writing and signed by an authorized representative of Johnson." As Douglas was not required to sign a modification to the contract, Johnson could modify the MDRA unilaterally—that is, without Douglas's agreement or knowledge. Therefore, Johnson's promise to arbitrate was illusory, and the MDRA was unenforceable. *See Jackson*, 525 N.E.2d at 415-16.

Even if the above provision did not render the MDRA unenforceable, we would nonetheless affirm the district court's decision. The MDRA must be read in conjunction with the Mandatory Dispute Resolution Policy, which was contained in the employee handbook. The MDRA and Mandatory Dispute Resolution Policy form an integrated contract, as evidenced by the facts that: (1) Douglas signed both documents on the same day, (2) both documents addressed the same subject matter and parties—that is, dispute resolution and arbitration between Johnson and

7

Douglas, (3) the MDRA specifically referenced the Mandatory Dispute Resolution Policy section of the handbook, and (4) the MDRA relied on the procedures set forth in the handbook to expand upon the dispute resolution procedures. *See Gilmore*, 477 N.E.2d at 1073. The Mandatory Dispute Resolution Policy could be unilaterally modified by Johnson, as expressly stated both in the employee handbook and in the acknowledgment of receipt of the handbook. Because Johnson retained the right to unilaterally modify part of the integrated contract, its promise to arbitrate was illusory. *See Jackson*, 525 N.E.2d at 415-16. Thus, the district court was correct that the contract was unenforceable due to Johnson's illusory promise.[1]

For the foregoing reasons, we affirm the denial of the motion to dismiss.

**AFFIRMED.**

---

[1] We do not consider Johnson's severability argument because, unlike the choice of law issue, Johnson did not argue before the district court that any invalid provisions of the contract were severable. *See Ledford*, 657 F.3d at 1258.