**EFiled: Oct 31 2014 01:54PM EDT**
**Transaction ID 56274285**
**Case No. 9465-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

October 31, 2014

Peter J. Walsh, Jr., Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

Catherine A. Gaul, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

Re: *Scanbuy, Inc. v. NeoMedia Technologies, Inc.*
C.A. No. 9465-VCN
Date Submitted: May 28, 2014

Dear Counsel:

Defendant NeoMedia Technologies, Inc. ("NeoMedia") has moved, pursuant to Court of Chancery Rule 12(b)(3), to dismiss for improper venue Plaintiff Scanbuy, Inc.'s ("Scanbuy") Verified Complaint for Declaratory, Injunctive, and Other Relief (the "Complaint"). NeoMedia relies on a forum selection clause contained in Section 11 of the "Settlement and License Agreement" between Scanbuy and NeoMedia (the "Agreement"), effective October 16, 2009.[1] That clause provides that "any dispute" between the parties must be brought in a federal or state court in Atlanta, Georgia. Scanbuy argues that the Agreement was

---

[1] Compl. Ex. A.

terminated before it filed the Complaint and, regardless, its claims are not subject to the forum selection clause.

## I. BACKGROUND

Scanbuy and NeoMedia are both providers of "Quick Response" or "QR" codes and services. NeoMedia also licenses its patents. The parties entered into the Agreement to resolve then-pending patent infringement litigation. The Agreement granted a license from NeoMedia to Scanbuy, as well as one from Scanbuy to NeoMedia.

The parties agree that Scanbuy's license was terminated in 2013. However, the parties dispute (i) whether the license was terminated on September 17, 2013 or December 2, 2013, and (ii) whether the cancellation of Scanbuy's license terminated the entire Agreement.

In February and March 2014, NeoMedia sent, or caused to be sent, letters to many of Scanbuy's customers, alleging that their use of Scanbuy's services infringed on some of NeoMedia's patents.[2] Scanbuy claims that "[t]hese letters contain false and/or misleading information about Scanbuy and NeoMedia's

---

[2] *See* Compl. Exs. E-H.

patents, and have affected Scanbuy's current and expected business relationships with its customers, thereby causing irreparable harm to Scanbuy."[3]  The letters have apparently caused many of its largest customers to seek shorter contracts, or fail to renew their contracts altogether.

Scanbuy filed the Complaint with this Court on March 21, 2014, alleging that NeoMedia (i) violated 6 *Del. C.* § 2532(a)(8), by disparaging the goods, services, or business of Scanbuy through false or misleading representations of fact, (ii) violated 6 *Del. C.* § 2532(a)(12), by engaging in conduct that creates a likelihood of confusion or of misunderstanding, and (iii) tortiously interfered with Scanbuy's business relationships and expected business relationships.  Scanbuy seeks injunctive relief to prevent NeoMedia from sending more letters.

Scanbuy also seeks a declaratory judgment, pursuant to 10 *Del. C.* ch. 65 and Court of Chancery Rule 57, declaring that Scanbuy and its customers, are covered by a current license agreement between NeoMedia and Microsoft Corporation.

---

[3] Compl. 1.

NeoMedia argues that this Court is an improper venue because the Agreement's forum selection clause directs "any dispute" between the parties to Georgia. NeoMedia contends that the Agreement was in effect when Scanbuy filed the Complaint.

## II.  ANALYSIS

"The courts of Delaware defer to forum selection clauses" and grant Rule 12(b)(3) motions to dismiss "where the parties 'use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action.'"[4]  The Agreement provides: "[t]he parties agree that any dispute . . . shall be brought in a Federal or state court seated in Atlanta, Georgia . . . and the parties hereby consent to the exclusive jurisdiction and venue of such court."[5]  Therefore, if (i) the Agreement was effective when Scanbuy filed the Complaint, and (ii) the mandatory forum selection clause encompasses Scanbuy's claims, the Court will dismiss the Complaint.

---

[4] *Ashall Homes Ltd. v. ROK Entm't Gp. Inc.,* 992 A.2d 1239, 1245 (Del. Ch. 2010) (quoting *Eisenbud v. Omnitech Corp. Solutions, Inc.*, 1996 WL 162245, at *1 (Del. Ch. Mar. 21, 1996)).

[5] Compl. Ex. A ¶ 11.

A. *Was the Agreement in Effect When Scanbuy Filed the Complaint*?

The parties dispute whether the entire Agreement, or only Scanbuy's license under the Agreement, has been terminated. Section 2 governs the scope of the licenses granted pursuant to the Agreement. Section 2.1 provides, "[s]ubject to the terms and conditions of this Agreement . . . NeoMedia grants to Scanbuy a royalty-bearing, non-exclusive, license . . . ." Section 2.2 provides "[s]ubject to the terms and conditions of this Agreement . . . Scanbuy grants to NeoMedia (a) a paid-up, irrevocable, non-exclusive license . . . and (b) a paid-up, non-exclusive sublicense . . . ."

According to Section 2.3, "[t]he NeoMedia license granted in [Section 2.1] to Scanbuy shall terminate . . . upon any [] material breach of this Agreement by Scanbuy . . . . For the avoidance of doubt, the Scanbuy license granted to NeoMedia [in Section 2.2] shall not terminate, but the Scanbuy sublicense granted to NeoMedia is terminable . . . ."

On September 17, 2013, NeoMedia informed Scanbuy that Scanbuy was in material breach of the Agreement due to its failure to provide required audited

financials.[6] Therefore, "[p]er section 2.3 of the Agreement, [Scanbuy's] license to NeoMedia's patents granted in section 2.1 is terminated effective immediately."[7]

On December 2, 2013, Scanbuy responded to NeoMedia's purported termination of its license. Scanbuy claimed that it was not in breach of the Agreement; however, Scanbuy accepted "termination of the Agreement and the license contained therein on the basis set forth in [NeoMedia's] letter of September 17."[8] On December 16, 2013, NeoMedia replied, "disagree[ing] with the assertion . . . that the [Agreement] is terminated. NeoMedia did not terminate the Agreement, it terminated Scanbuy's license to NeoMedia's patents."[9] According to NeoMedia, Section 2.3 contains a one-way termination right allowing for the cancellation Scanbuy's license without affecting Scanbuy's ongoing obligations to NeoMedia.

---

[6] Transmittal Aff. of Jacob R. Kirkham in Supp. of Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss Ex. B.

[7] *Id.*

[8] *Id.* Ex. C.

[9] *Id.* Ex. D.

However, Scanbuy relies on Section 7 of the Agreement to argue that the cancellation of its license terminated the entire Agreement. Section 7 provides

> *The Term of this Agreement shall be until* the last to expire of the NeoMedia Licensed Patents, in which case all payment obligations under Section 3, not then due and payable, shall cease, or *upon the occurrence of the events described in Section 2.3 of this Agreement*, in which case any then accrued payment obligations shall become due and payable.[10]

The parties do not dispute that before Scanbuy filed the Complaint, its license was terminated "[p]er section 2.3 of the Agreement." NeoMedia alleges that the license terminated on September 17, 2013, due to Scanbuy's material breach of the Agreement, which was a triggering event described in Section 2.3. While Scanbuy disputes its breach, on December 2, 2013, it accepted NeoMedia's termination of its license "on the basis set forth in [NeoMedia's] letter of September 17." Scanbuy thus agreed to accept the termination of its license under Section 2.3.

Scanbuy argues that Section 7's unambiguous language makes clear that the Agreement was terminated since an event described in Section 2.3 occurred, or at least was stipulated to have occurred. Since Scanbuy believes that the Agreement

---

[10] Compl. Ex. A ¶ 7 (emphasis added).

was terminated before it filed the Complaint, it argues that the forum selection clause is irrelevant to this dispute.

Scanbuy's argument may have merit, especially when Section 7 is read in isolation. However, Section 2.3 provides that Section 2.2, which governs NeoMedia's license from Scanbuy, survives the occurrence of events that void Scanbuy's license. Because at least this piece of the Agreement arguably survived the termination of Scanbuy's license, NeoMedia contends that the Agreement never terminated in its entirety and the forum selection clause remains enforceable.

The "interpretation of the [Agreement's] termination provision . . . [is an] issue[] for the court identified in the [forum selection clause] to decide."[11] The parties present conflicting interpretations of the contract and "the court selected by the parties to adjudicate disputes under the [Agreement] might reasonably conclude" the issue either way.[12] This Court "cannot decide whether the termination provision applies without usurping the role of the [Georgia courts], which were expressly charged with adjudicating disputes over the [Agreement]."[13]

---

[11] *Ashall Homes*, 992 A.2d at 1247.

[12] *Id.* at 1248.

[13] *Id.*

Disputes over whether the Agreement has been terminated or the forum selection clause survives should be resolved by the courts in Atlanta.[14]

B. *If the Agreement Survives, Does the Forum Selection Clause Apply to Scanbuy's Claims*?

"When a contract contains a forum selection clause, this court will interpret the forum selection clause in accordance with the law chosen to govern the contract."[15]  Scanbuy and NeoMedia chose "the laws of [the] United States of America and the State of Georgia, without reference to the State's choice of law provisions" to govern their relationship.[16]  This Court must therefore apply either Federal or Georgia law in interpreting the forum selection clause.

Had Scanbuy filed its claims in Atlanta, it would have been limited to state court.  The Complaint provides no basis for diversity jurisdiction, since both Scanbuy and NeoMedia are Delaware corporations.  Federal question jurisdiction is likewise inappropriate because "federal jurisdiction exists only when a federal

---

[14] The question of whether the Agreement (or part of it) has survived is reasonably subject to debate.  An obvious answer that it did not survive would likely lead to a different outcome.

[15] *Id.* at 1245.

[16] Compl. Ex. A ¶ 11.

question is presented on the face of the plaintiff's properly pleaded complaint."[17]

"Federal jurisdiction cannot be predicated on an actual or anticipated defense . . . or rest upon an actual or anticipated counterclaim."[18] Scanbuy's well-pleaded complaint, asserting state law tort claims and a request for declaratory judgment based upon contract interpretation, does not present a federal question. Since a state court is the appropriate forum for Scanbuy to bring its claims in Atlanta, this Court will interpret the forum selection clause in accordance with Georgia law.[19]

Georgia law recognizes that tort claims, such as tortious interference with business relations, may be subject to a contractual forum selection clause when the tort claims arise either "directly or indirectly" from a contractual relationship.[20]

---

[17] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[18] *Vaden v. Discover Bank*, 556 U.S. 49, 50 (2009).

[19] The Court does not overlook the possibility that a federal court might exercise its supplemental jurisdiction to hear Scanbuy's claims in a case otherwise properly before it. However, the choice between Federal law and Georgia law does not affect the outcome of the Court's analysis. District courts in the Eleventh Circuit defer to forum selection clauses. *See, e.g.*, *Infectious Disease Solutions, PC v. Synamed*, 2007 WL 2454093, at *4 (N.D. Ga. Aug. 23, 2007). Further, under Federal law, broad contractual forum selection clauses cover tort claims that "aris[e] directly or indirectly from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987), *aff'd and remanded*, 487 U.S. 22 (1988).

[20] *Brinson v. Martin*, 469 S.E.2d 537, 540 (Ga. Ct. App. 1996).

The Agreement's forum selection clause mandates that "any dispute" be brought in Georgia, and such phrase creates a broad scope of coverage. Scanbuy charges NeoMedia with engaging in deceptive trade practices and tortiously interfering with Scanbuy's present and prospective business relationships. The Complaint frequently references the Agreement, and its claims relate to the Agreement's subject matter. While Scanbuy is not directly asserting contract claims, its claims are indirectly related to the Agreement, and certainly constitute disputes between the parties.[21]

Scanbuy is not attempting to recast contract-based claims as tort claims to avoid the forum selection clause.[22] However, to respect the parties' contractual

---

[21] Through Count 4 of the Complaint, Scanbuy seeks a declaratory judgment that it and its customers are covered by a license granted by NeoMedia to Microsoft. While this claim does not directly implicate the Agreement, it is a dispute between the parties regarding Scanbuy's authorization to use NeoMedia's patents. This count is related to the other claims in the Complaint and is within the broad scope of the forum selection clause. Further, in the interests of judicial economy, this count should not be severed from the others when a Georgia court can consider all claims together.

[22] NeoMedia argues that Scanbuy acknowledged that it is really asserting a "breach of contract" claim when, in September 2013, it sought to arbitrate the propriety of NeoMedia's September 17, 2013 letter purportedly terminating Scanbuy's license. Def.'s Reply Br. 21. Scanbuy's current causes of action arise from letters sent to its customers in February and March 2014. Scanbuy's September 2013 arbitration

agreement, the tort claims are subject to the forum selection clause if that clause was in effect when Scanbuy filed the Complaint. Therefore, if the Agreement has not been terminated, dismissal for improper venue is warranted.[23]

### III. CONCLUSION

A plaintiff has "substantial discretion" over its choice of venue.[24] However, such discretion may be limited by a valid forum selection clause. The courts identified in the forum selection clause are proper forums to determine whether the Agreement has been terminated. If the Agreement, and hence its broadly worded forum selection clause, was effective when Scanbuy filed the Complaint, then dismissal for improper venue is proper.

---

filing did not concede that causes of action that had yet even to arise were breach of contract claims. In addition, the claims made in the Complaint are distinct from the arbitration claims.

[23] Section 8 of the Agreement sets forth the parties' agreement "to resolve any dispute (other than patent infringement, patent validity, patent enforceability, or any other issue concerning a substantive patent right), by arbitration . . . ." Whether or not the arbitration clause is applicable depends on (i) whether the Agreement has been terminated and (ii) whether Scanbuy's claims are subject to the clause. These issues of contract interpretation should be decided in Georgia.

[24] *Troy Corp. v. Schoon*, 2007 WL 949441, at *3 (Del. Ch. Mar. 26, 2007).

For the foregoing reasons, NeoMedia's Motion to Dismiss is granted, and

the Complaint is dismissed without prejudice.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:     Register in Chancery-K