77563. HORNSBY v. PHILLIPS.
77564. NATION v. PHILLIPS.
(378 SE2d 870)

SOGNIER, Judge.

James E. Phillips filed an action against Applied Control Systems (ApCon) and John C. Nation and Michael Hornsby, ApCon's primary officers and shareholders, alleging that they had violated the Georgia Sale of Business Opportunities Act ("the Act"), OCGA § 10-1-410 et seq., in their sale to him of twenty-five coin operated telephones. The original complaint was brought against ApCon and Nation, and included claims for breach of warranty, breach of contract, and fraud. After the trial court granted Phillips' motion for partial summary judgment against ApCon, which is not in issue here, and discovery by Phillips revealed that ApCon no longer had assets, Hornsby was added as a defendant by amendment and the claims against Hornsby and Nation were tried before a jury on the cause of action for violation of the Act. The jury returned a verdict in favor of Phillips and against both Hornsby and Nation in the amount of $28,657.35 and all attorney fees. Judgment was entered on the jury's verdict, and these appeals ensued.

Construing the evidence to support the verdict, the record reveals that ApCon was engaged in the business of designing, manufacturing and marketing electronic components and equipment for the coin operated telephone market. Its business consisted of two main divisions. One division, headed by Hornsby, provided field installation and maintenance services to MCI Telecommunications, Inc. The other di-

vision, headed by Nation, was dedicated to research and development of "intelligent" coin operated telephones, i.e., those capable of operating independent of the local telephone company's central office. In late 1984, as part of its research and development efforts, and to develop marketing programs for the products it envisioned manufacturing, ApCon began acting as a distributor of telephones manufactured by Coin-Call, Inc., while also buying Coin-Call phones for its own account which it installed in locations throughout metropolitan Atlanta after arranging license agreements with the owners of the locations. ApCon retained sales representatives to market the telephones to others and to obtain and solicit license agreements for locations for the phones ApCon owned. Lisa A. McCorkle had day-to-day responsibility over the sales representatives.

In the industry, selling telephones together with locations for their installation is called a "route." On November 19, 1984, appellee saw an ApCon advertisement in the *Atlanta Constitution* offering coin telephone "routes," and contacted the company to inquire about a prospective purchase. Appellee was directed to McCorkle, who assigned a sales representative, Terry Slater, to follow up. Slater and appellee met on a number of occasions, and Slater furnished appellee with promotional literature which represented that ApCon would supply or assist customers in finding locations for the coin telephones purchased. Appellee testified at trial that he was promised "prime" locations, such as airports and bus stations, for which ApCon was then negotiating. Prior to the end of January 1985, other ApCon sales representatives also offered to find locations for customers. In late January 1985, ApCon's attorneys informed the officers that selling locations and telephones together as a "route" was a violation of the Act, and that ApCon must immediately cease doing so.

On February 7, 1985, appellee entered into a written contract with ApCon for the purchase of 25 Coin-Call phones. The language in the contract did not contemplate the sale of a "route." On or about April 10, 1985, the order was upgraded to more sophisticated telephones (5 of which were subsequently traded for 4 telephones manufactured by Westinghouse) at an additional cost of $7,500. On April 22, 1985, after appellee complained about the fact that he had thought he was purchasing a "route," appellee and ApCon entered into an assignment agreement wherein, for $150 each, ApCon assigned 10 locations to appellee which previously had been obtained for ApCon's own account, and appellee installed his telephones at these locations. Appellee experienced mechanical and servicing difficulties with the telephones, and by letter dated November 19, 1985, sought to rescind the transaction. By letter dated January 9, 1986, ApCon refused and this action followed.

1. Nation's appeal was docketed in this court on July 27, 1988,

and to date no enumeration of errors or brief on appeal has been filed in case no. 77564. Accordingly, pursuant to Rule 14 of this Court, Nation's appeal is dismissed.

2. In case no. 77563, Hornsby (hereinafter appellant) first contends that the trial court erred by failing to direct a verdict in his favor because the Act does not apply in that appellant is not a "seller" of a "business opportunity" within the meaning of the Act. The Act prohibits "the sale or lease of, or offer to sell or lease, any products, equipment, supplies, or services for the purpose of enabling the purchaser to start a business and in which the seller or company represents: (i) That the seller or company will provide locations or assist the purchaser in finding locations for the use or operation of vending machines, racks, display cases or other similar devices, or currency operated amusement machines or devices." OCGA § 10-1-410 (2) (A) (i).

Contrary to appellant's argument, it is clear that the definitions in the Act cover the conduct complained of here. Although the statute does not state *specifically* that it is applicable to coin operated telephones, neither does it state that it is not. In this case, when the statute was enacted, private ownership of coin operated telephones was not permitted. However, the evils contemplated and sought to be remedied by the Act would be equally possible as to privately owned coin telephones, once that became a possibility, as to any other vending machine. Further, we know of no reason a coin operated telephone may not be considered a vending machine. It simply dispenses a service instead of a product upon insertion of a coin. There are other such "service-vending" machines; for example, machines which weigh the vendee, or ascertain his or her blood pressure. In fact, the record in this case reveals that in its sales literature provided to prospective purchasers, ApCon referred to the privately owned coin operated telephone as "The Ultimate Vending Machine," and boasted that these "have proven to be the highest earning vending machines in the fifty year history [of] our industry." We note also that ApCon's sales literature also states clearly that its staff "can assist [the purchaser] in finding locations," a representation specifically mentioned in the statute, providing further support for coverage. Even more persuasive, perhaps, is the fact that there is uncontradicted evidence in the record that ApCon's attorney advised it that the offer to provide locations in conjunction with the sale would be a violation of the Act, making it clear that at least in his opinion, sale of the telephones as a business opportunity was covered by the Act.

As to appellant's argument that he is not a "seller" under the Act, OCGA § 10-1-410 (10) provides that "[s]eller" includes "any person who offers to sell to individuals any business opportunity, either directly or through any agent," and (8) defines "[p]erson" as "any

individual, corporation, partnership, joint venture, association, trust, unincorporated organization, or other entity and shall include any other person that has a substantive interest in or effectively controls such person as well as the individual officers, directors, general partners, trustees, or other individuals in control of the activities of such person."

We find that appellant was himself a "seller" within the meaning of the Act, in that he was an individual who had a substantive interest in a corporation which offered to sell a business opportunity and is therefore included in OCGA § 10-1-410 (10).

The Georgia Sale of Business Opportunities Act was enacted in 1980, Ga. L. 1980, p. 1233, § 1, and its purpose was, inter alia, "[t]o prevent and prohibit fraudulent and deceptive practices in the sale of business opportunities." Appellee alleged in his action that ApCon had misrepresented material facts in advertising and selling business opportunities, in this case, ownership of coin operated telephones. Thus, the gist of the action brought by appellee was the very essence of the legislative intent in enacting the statute. "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Accordingly we find that the Act applies to the case sub judice, and we turn to appellant's other enumerations of error.

3. Appellant next contends the trial court erred by failing to direct a verdict in his favor because appellee's claims under the Act rested solely on parol evidence, which was barred both by the parol evidence rule and by the contract itself. We do not agree. First, the record does not support appellant's allegation that appellee's claims were supported solely by parol evidence, as ApCon's printed sales literature contains representations identical to those appellee claims were made to him by ApCon's sales representatives.

Second, the parol evidence rule forbids the admission of evidence only when oral testimony is introduced to vary or change the terms of a contract as written. The contract in question here, the February 7 agreement, was silent as to whether ApCon would furnish locations and, thus, the evidence of ApCon's representations allowed in here was not introduced for the purpose of showing that the contract terms were actually different from those contained in the written contract, but to prove that *additional representations*, in violation of *the Act* but not altering the terms of *the contract*, were made. As such, the evidence was admissible. " 'Parol testimony may be admitted . . . to show a distinct collateral understanding, although it may not contradict or vary the writing itself. [Cit.]' [Cit.] ' "The test to determine whether the oral agreement is one which the law will permit to be (pled) and (proven) is whether the oral agreement constitutes a part

of the written contract or whether, instead, it is a separate and distinct oral contract which is not inconsistent with the written contract. If the latter, it admits of pleading and proof. [Cits.]" [Cit.]' [Cit.]" *Taylor v. Career Concepts*, 184 Ga. App. 551, 553-554 (3) (362 SE2d 128) (1987). Here, where the cause of action is for violation of the Act, rather than for breach of contract, and the Act forbids the making of certain representations, requiring that appellee show the making of those representations in order to recover, it would frustrate the purposes of the Act to deny the admissibility of those representations.

Nor does the language in the February 7 contract stating that it is the entire contract forbid the admission of this evidence, as this action was not brought on the contract. Therefore, because the cause of action was for violation of the Act, rather than for breach of contract, it is immaterial that the contract itself did not contain the representations which constitute the alleged violation. Accordingly, we find no error in the admission of the evidence complained of, and the trial court did not err by denying appellant's motion for a directed verdict on that basis.

4. Appellant also maintains a directed verdict in his favor was warranted because appellee's claims under the Act were time barred. In this regard, appellant first argues that the statute of limitation contained in OCGA § 10-1-401, the Fair Business Practices Act (FBPA), provides that "[n]o action shall be brought *under this part* . . . [m]ore than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation; or . . . [m]ore than two years after the termination of any proceeding or action by the State of Georgia, whichever is later." (Emphasis supplied.) As stated, this statutory language is found in the FBPA, OCGA § 10-1-390 et seq., but is not found in the Act in issue here, OCGA § 10-1-410 et seq., and appellant urges this court, without citing any authority, to hold that the statute of limitation for the FBPA extends as well to an action under the Act. However, although the Act provides that violation of the Act "shall constitute an unfair or deceptive act or practice in the conduct of a consumer act or practice or consumer transactions under . . . the 'Fair Business Practices Act of 1975,'" OCGA § 10-1-417 (b), the Act does not mandate that actions for violation of its provisions must be brought under the provisions of the FBPA, and appellee in the case sub judice did *not* proceed under the FBPA but instead elected to proceed under the rescission remedy afforded him in § 10-1-417 (a) of the Act. Because appellee's cause of action arose solely under that statute, and the Act itself contains no statute of limitation, the general statute of limitation, providing that an action to enforce a right accruing to an individual under state statute must be brought within 20 years after the action accrues, governs. See OCGA § 9-3-22; *Perry & Co. v. Knight Ins. Underwriters*, 149 Ga.

App. 128, 130 (2) (253 SE2d 808) (1979). Under that statute of limitation, appellee's action was not barred. The question of whether 20 years is an appropriate limitation period for the exercise of this right affecting business transactions is one we must leave to the legislature. We note, however, that although appellee was not required to file his action for 20 years after its accrual, the statutory right to rescind the transaction and recover his investment derived from the Act would not have been available to appellee had he not notified the seller of his exercise of that right within one year.

The alternate basis for appellant's argument that appellee's suit was time barred is the existence in the contract of a provision that "[n]o action, regardless of form, arising out of or in connection with the sale of Units hereunder . . . may be brought more than one (1) year after the cause of action has arisen." Appellant argues that although appellee's original suit was timely brought, appellant was not added as a party defendant until after the expiration of one year and therefore appellee's claims against appellant were not timely. We do not reach this argument, however, because we find that since appellee's action was not based on the contract, a defense alleging that the contract allows the complained of conduct or prohibits legal action for its redress simply does not apply. In *Attaway v. Tom's Auto Sales*, 144 Ga. App. 813, 814-815 (242 SE2d 740) (1978), we held that when an action is brought for violation of the FBPA, contractual defenses are irrelevant and inapplicable. The same principle applies here, and we hold that contractual defenses are inapplicable when an action is based not on the contract but solely on an alleged violation of the Sale of Business Opportunities Act.

5. We find no merit in appellant's enumeration contending the trial court erred by failing to grant his motion for a directed verdict on his affirmative defenses of accord and satisfaction and waiver. Appellant's contention in this regard is that there were three separate, unconnected transactions, some of which involved the sale of telephones and one of which involved the assignment of locations, and that, therefore, because a sale of vending machines and the assignment of locations were not contained in the same transaction but each transaction was an accord and satisfaction of its predecessor agreements, the Act was not violated. We find it to be sheer sophistry to argue that because the Act prohibits the sale of vending machines "*together with*" assistance in finding locations or a representation that such assistance will be provided, it is not a violation of the Act if those sales and representations take place in separate agreements between the same seller and purchaser as to the same items sold. It is clear in the case sub judice that both the original representations that assistance would be forthcoming as to locations, and the eventual assignment of locations, were intended to apply to the machines sold.

6. We find that appellant's enumeration regarding the trial court's failure to charge the jury that McCorkle and Slater were "special agents" of ApCon alleges error which is more apparent than real. The trial court charged the jury on agency and on apparent authority, essentially covering the material contained in the requested charge. Appellant complains that had the trial court instructed the jury that McCorkle and Slater were "special agents," he would have had to instruct them as well that appellee had a duty to inquire into their authority and thus appellant was harmed by the trial court's omission in this regard. However, the trial court charged the jury that "[a]n agency cannot be proved by the mere declarations of a person purporting to act as agent for another. And one who deals with such a person is bound to inquire into his authority or take the risk of ascertaining when it is too late, that he was not authorized to bind the alleged principal." Thus, the trial court covered the substance of the requested charge in its instructions to the jury, and " '[i]f the substance of a properly requested and appropriate instruction is given in the jury charge as a whole, the court is under no obligation to employ the exact language requested. [Cit.]' [Cit.]" *Simpson v. Reed*, 186 Ga. App. 297, 298 (2) (367 SE2d 563) (1988).

Nor do we find reversible error in the trial court's having allowed Nation to testify, over objection, that although McCorkle did not have actual authority to make the representations to customers, because of her title it appeared to customers that she had that authority. Even assuming without deciding, that it was error to allow this statement by Nation into evidence over appellant's objection, the same evidence was given by appellee without objection, and thus Nation's testimony on this point was merely cumulative, and therefore harmless. See generally *Woodruff v. Naik*, 181 Ga. App. 70 (1) (351 SE2d 233) (1986).

7. Appellant maintains that although appellee complied with the notice provision in the Act as to ApCon, appellee did not provide *appellant* with notice of rescission "within one year of the date of the contract" as required by former OCGA § 10-1-416 (a) (now OCGA § 10-1-417 (a)). The required notice was given by letter dated November 19, 1985 from appellee's counsel to ApCon and the evidence adduced at trial showed that on that date, appellant controlled the corporation, and negotiations were ongoing for the division of ApCon. The trial court found there was an issue of fact as to the question of notice to appellant and submitted that issue to the jury. The jury obviously decided the question adversely to appellant, and we find that the evidence authorized it to do so.

8. In the remaining enumeration of error, appellant asserts that the trial court erred by awarding attorney fees to appellee. OCGA § 10-1-416 (b), as it read at the time pertinent to this action, provided

that "[a]ny purchaser injured by a violation of this part . . . may bring an action for recovery of damages, *including reasonable attorneys' fees.*" (Emphasis supplied.) Appellant does not challenge appellee's entitlement to attorney fees, but maintains the amount of the award was not supported by sufficient evidence. "Even assuming without deciding that [appellee] otherwise met his burden of demonstrating an entitlement to a recovery of attorney fees pursuant to [OCGA § 10-1-416 (b)], he did not meet his burden of introducing sufficient evidence as to the amount of reasonable attorney fees that was recoverable. 'Proof of what was paid for professional services is not, without more, sufficient proof of their value.' [Cit.]" *Eberhart v. Morris Brown College*, 181 Ga. App. 516, 519 (3) (352 SE2d 832) (1987). Accordingly, we affirm the judgment on condition that appellee write off the award of attorney fees; otherwise the judgment is reversed.

*Judgment affirmed on condition in Case No. 77563. Appeal dismissed in Case No. 77564. Carley, C. J., Banke, P. J., Birdsong, Pope, Benham and Beasley, JJ., concur. Deen, P. J., and McMurray, P. J., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

1. The asserted basis for Hornsby's liability resulting from his corporate office was an alleged violation of the Georgia Sale of Business Opportunities Act, OCGA § 10-1-410 et seq., which in pertinent part regulates the sale of vending machines, racks, display cases or other similar devices, or currency-operated amusement machines or devices. That Act, however, is inapplicable in this case, because coin-operated telephones are not vending machines or any other of the devices listed in the statute, and I believe that the trial court erred in refusing to direct a verdict for Hornsby on this basis.

As acknowledged by the majority opinion, at the time the Act was passed, private ownership of coin-operated telephones was not even possible. It logically follows that the legislative intent behind the Act did not extend to such products. The Act, being in derogation of the common law, "must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms." *Ford Motor Co. v. Carter*, 239 Ga. 657, 658 (238 SE2d 361) (1977). Since the legislature obviously could not have intended application of the Act to coin-operated telephones and since the plain and explicit terms of the Act do not include such devices, application of the Act presently in this case works an ill-advised and implicitly impermissible judicial encroachment and usurpation of the legislative prerogative, purpose, and process. Accordingly, I must dissent from the majority opinion's contrary conclusion.

2. I concur fully with the dismissal of Nation's appeal. I am au-

thorized to state that Presiding Judge McMurray joins in this opinion.

DECIDED JANUARY 26, 1989 —
REHEARING DENIED FEBRUARY 16, 1989 —

*Hansell & Post, R. Matthew Martin*, for appellant (case no. 77563).

John C. Nation, Sr., *pro se* (case no. 77564).

*Mullins, Whalen & Shepherd, Newton M. Galloway*, for appellee.