A98A1296. LEAGUE v. U. S. POSTAMATIC, INC. et al.
(508 SE2d 210)

MCMURRAY, Presiding Judge.

Plaintiff-appellant Margery K. League brought this action against defendants-appellees U. S. Postamatic, Inc. ("Postamatic") and its officers, Herbert M. Schwartz and John L. Rathbun, Jr., alleging defendants fraudulently "solicited, sold and distributed coin operated vending machines and scales . . ." in violation of the Georgia Sale of Business Opportunities Act ("SBOA," OCGA § 10-1-410 et seq.), the Georgia Fair Business Practices Act ("FBPA," OCGA § 10-1-390 et seq.), and in breach of warranty. According to the complaint, "[p]laintiff, along with her son, [non-party Harry M. League,] created Pennsylvania and Delaware corporations, Charity Vending of Pennsylvania, Inc. and Charity Vending of Delaware, Inc., respectively for the purpose of purchasing, owning and operating [digital, coin-operated vending machines and scales, hereafter] the Scales business. . . . On or about March 22, 1990, Plaintiff's corporations, by and through Plaintiff's son, Harry M. League[,] contracted with Defendant, Postamatic . . . to purchase 200 Graco 2000 scales at . . . $1150.00 each and the exclusive . . . distributorship rights for the Scales in southeast Pennsylvania and northern Delaware. . . . The purchase price . . . was $230,000.00. . . . Of [that] purchase price . . . (plus a location fee of $200.00 per location for 200 locations) paid to Defendant, Postamatic, Plaintiff paid $140,000.40. . . ." Although the scales were physically delivered, plaintiff alleged that delivery was not in compliance with the contractual definition of " 'Delivery,' . . . when the scales were installed in working condition at locations approved by Defendants within ninety (90) days after execution of the Purchase Agreement. . . . [Alleging that] locations for placement of the Scales were never secured in total, [plaintiff claimed] the Scales were not 'delivered' . . ., with the result that Plaintiff's Purchase Agreement was breached by Defendants entitling her to rescind the contract and receive 12% interest on her investment, along with a full refund. . . ." Plaintiff further contended that, "[to]

the extent that some Scales were placed, the Scales did not perform as required, suffering from defective parts and operation. Additionally, the locations identified by Defendant, Postamatic . . . did not generate revenue which . . . approached the representations made by defendant, Postamatic. . . ."

In verified answers, defendants Postamatic and Herbert M. Schwartz admitted that Harry M. League contracted with U. S. Postamatic, Inc. to purchase certain scales and the right to distribute those scales, "but denied the material allegations of breach of contract and fraud. Defendant John L. Rathbun fell into default but was ultimately granted permission to open that default. After substantial discovery, cross-motions for summary judgment were filed. In support of their motions, defendants showed the following undisputed facts:

Plaintiff attended a meeting in her son's office, where defendant John L. Rathbun "pointed out the profitability of this venture. And he assured [plaintiff and her son] that the minimum that [they] would make would average about $20 per machine per week." She "contributed a significant amount of money to this venture," by writing checks to her corporation, Charity Vending, but she never entered into any signed purchase agreement with defendant Postamatic, either personally or as an officer of any corporate party. Rather, the purchase agreements were executed by Harry M. League. Harry M. League already had recovered essentially the same damages as plaintiff now seeks, in a prior action brought in the Superior Court of Cobb County, Georgia. Pursuant to a consent order of settlement and dismissal, Postamatic, Harry M. League, Herbert M. Schwartz, and John L. Rathbun "consented to and agreed to dismiss the claims, counterclaims, and cross-claims against the other . . . with prejudice." Under the terms of the settlement, Harry M. League received $300,000 cash and a paid up $125,000 life insurance policy on defendant Herbert M. Schwartz, totalling $425,000. But plaintiff herself made the initial down payment of $27,025 on March 22, 1990, with her personal check drawn to the order of Postamatic. It is further undisputed that plaintiff herself never gave any defendant any written notice of claim that she was victimized by defendants' alleged violation of the SBOA or FBPA. The only written notice of rescission was sent by Stephen C. Steele, Esq. of the law firm of Moore & Rogers, on behalf of "[his] client, Harry M. League. . . ."

Plaintiff appeals from the order of the trial court denying her motion for partial summary judgment and granting summary judgment to all defendants. *Held*:

1. Plaintiff instituted this action on April 16, 1996. But in her deposition taken March 17, 1992, as part of Harry M. League's counterclaim, she acknowledged that the last time Charity Vending oper-

ated any scales was "[o]ver a year . . . ago," i.e., sometime in 1991. Consequently, any claim for rescission of an implied simple contract formed by plaintiff's March 22, 1990, payment of $27,025 directly to defendant Postamatic is barred by the applicable four-year statute of limitation. OCGA § 9-3-25. A claim for conversion is similarly barred by OCGA § 9-3-32. See *Talley-Corbett Box Co. v. Royals*, 134 Ga. App. 769, 770 (1) (216 SE2d 358).

2. Plaintiff contends the trial court erred in granting summary judgment on her claim under the SBOA, arguing that she either was not obliged to give notice or that she was a third party beneficiary of the notice given by Stephen C. Steele, Esq. on behalf of Harry M. League.

(a) We agree that plaintiff meets the definition of a "Purchaser," i.e., "any person who is solicited to become obligated, or does become obligated, under any agreement." OCGA § 10-1-410 (9). But, assuming the truth of her allegations against defendants, one legal consequence of pursuing any SBOA-authorized remedy in her own name is that plaintiff must comply with the one-year written notice requirement imposed by OCGA § 10-1-417 (a) before she is "entitled to receive from the seller all sums paid to the seller." "[T]he statutory right to rescind the transaction and recover [the] investment derived from the [SBOA is not] available to [a plaintiff who has] not notified the seller of [the] exercise of that right within one year." *Hornsby v. Phillips*, 190 Ga. App. 335, 339 (4), 340 (378 SE2d 870). Plaintiff's contention that she is not obligated to give any notice is without merit.

(b) The question becomes whether the plaintiff can benefit from the notice given by her son, through counsel. We think not.

Attorney Steele confirmed that he had no attorney-client relationship with plaintiff at the time he notified defendants of Harry M. League's tender back of the scales and demand for the return of any sums invested. The maxim that the express mention of one thing amounts to the exclusion of another applies in these circumstances. "When certain persons or things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred. [Cit.]" Black's Law Dictionary, p. 692 (4th ed. 1951). Consequently, we conclude no genuine issue of material fact exists as to whether plaintiff complied with the notice requirement of OCGA § 10-1-417 (a). She did not.

3. OCGA § 10-1-417 (b) provides that "[t]he violation of any provision of [the SBOA] shall constitute an unfair or deceptive act or practice in the conduct of a consumer act or practice or consumer transactions under Part 2 of this article, the 'Fair Business Practices Act of 1975,' and shall authorize an affected participant or purchaser to seek the remedies provided for in Code Section 10-1-399 and in

subsection (a) of Code Section 10-1-417." But "[n]o action shall be brought under this part . . . [m]ore than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation. . . ." OCGA § 10-1-401 (a) (1). It follows that any valid claim plaintiff had under the FBPA also is time-barred.

4. A judgment that is correct for any reason will be affirmed on appeal. *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673). The trial court did not err in granting summary judgment to all defendants, for the reasons discussed above. The denial of plaintiff's motion for partial summary judgment is moot.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED OCTOBER 26, 1998 —
RECONSIDERATION DENIED NOVEMBER 9, 1998

*Newton M. Galloway & Associates, Newton M. Galloway, Dean R. Fuchs*, for appellant.

*Varner, Stephens, Humphries & White, James T. White, S. Wade Malone, Eddie L. Graham*, for appellees.