S11G0417. AMERIREACH.COM, LLC et al. v. WALKER.
(719 SE2d 489)

CARLEY, Presiding Justice.
Beginning in 2006, Carol Walker, who is a physician and a Georgia resident, sold nutritional supplements purchased from Amerireach.com, LLC d/b/a AmeriSciences pursuant to an agreement which provided, among other things, that "[a]ny disputes arising from the terms hereof or relating hereto will be brought in the state and/or federal court of Harris, Texas, the convenience of which I hereby recognize." On February 5, 2009, Dr. Walker sent a written termination of the agreement and a demand that Ameri-Sciences repurchase certain unopened and unused products at a price not less than 90 percent of the original net cost pursuant to

OCGA § 10-1-415 (d) (1) of the Sale of Business Opportunities Act (SBOA). After expiration of the 30-day statutory waiting period provided in OCGA § 10-1-399 (b) of the Fair Business Practices Act (FBPA), Dr. Walker filed a damage suit in the State Court of Gwinnett County on April 7, 2009 against AmeriSciences and three of the company's corporate officers (Appellants) under the FBPA for failure to disclose and comply with the repurchase requirements of OCGA § 10-1-415 (d) (1). See OCGA § 10-1-417 (b).

AmeriSciences previously had filed a declaratory judgment action on February 13, 2009 against Dr. Walker in a Harris County, Texas state court. On June 3, 2009, the Texas court entered a final default judgment declaring that any damage suit for failure to repurchase, whether brought pursuant to the Georgia FBPA or otherwise, is subject to the forum selection clause in the parties' contract, that this clause is enforceable, and that the filing of any such action in any forum other than Harris County, Texas constitutes a breach of contract.

Thereafter, the Georgia trial court granted summary judgment in favor of AmeriSciences, ruling that Dr. Walker's claims are subject to an enforceable forum selection clause and barred by res judicata. In the same order, the trial court also dismissed the individual defendants for lack of personal jurisdiction and held that, in any event, they are not subject to individual liability under the SBOA.

The Court of Appeals reversed, concluding that, because Dr. Walker's complaint was based on a statutory violation instead of a breach of contract, the contractual defense of a forum selection clause does not apply, and her claims are not barred by res judicata. *Walker v. Amerireach.com*, 306 Ga. App. 658, 660 (1) (703 SE2d 100) (2010). After rejecting an alternative ground for summary judgment on which the trial court relied, the Court of Appeals also determined that the trial court had personal jurisdiction over the individual defendants even though they were present in Georgia only in their capacities as AmeriSciences officers, as they admittedly were founding members and top officers of a "multilevel distribution company" as defined by OCGA § 10-1-415 and generally knew Dr. Walker's cancellation rights thereunder, which apply to any agreement made in Georgia. *Walker v. Amerireach.com*, supra at 662-663 (3). The Court of Appeals also held that the complaint was sufficient to state a claim against the individual defendants under the FBPA based on a violation of the SBOA. *Walker v. Amerireach.com*, supra at 663 (3). We granted certiorari to consider Divisions 1 and 3 of the Court of Appeals' opinion.

1. Appellants contend that the Court of Appeals erred in failing to give res judicata effect to the earlier Texas declaratory judgment.

When jurisdictional issues such as the enforceability or applica-

bility of a "choice of forum" clause are adjudicated in a foreign judgment, that judgment generally is not subject to collateral attack, but is entitled to full faith and credit and is conclusive between the parties and their privies as to all matters that were placed in issue or might have been placed in issue. *Mid-Ga. Bandag Co. v. Nat. Equipment Rental*, 164 Ga. App. 68, 69 (2) (296 SE2d 391) (1982). See also *Van Buskirk v. Great American Bank of Broward County*, 175 Ga. App. 101, 102 (332 SE2d 394) (1985). We note that "[a] collateral attack based on lack of personal jurisdiction is precluded only when the defendant has appeared in the foreign court and has had an opportunity to litigate the issue. [Cits.]" *Aqua Sun Investments v. Kendrick*, 240 Ga. App. 671, 673 (2) (524 SE2d 519) (1999).

> "(A) judgment is entitled to full faith and credit — even as to questions of jurisdiction — when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." [Cits.]

*Crosby v. Wenzoski*, 164 Ga. App. 266, 270 (2) (296 SE2d 162) (1982) (quoting *Dufree v. Duke*, 375 U. S. 106, 111 (84 SC 242, 11 LE2d 186) (1963)). The foreign judgment may not be entitled to full faith and credit when it is challenged on jurisdictional grounds in a collateral proceeding such that the jurisdictional issue has been " 'raised and tried out' " in the second court. *Hoesch America v. Dai Yang Metal Co.*, 217 Ga. App. 845, 846 (1) (459 SE2d 187) (1995) (quoting *Baldwin v. Iowa State &c. Assn.*, 283 U. S. 522, 525 (51 SC 517, 75 LE 1244) (1931) and *Ins. Corp. v. Compagnie Des Bauxites*, 456 U. S. 694, 706 (102 SC 2099, 72 LE2d 492) (1982)). Under such precedent,

> the only avenue available to [Dr. Walker] to relitigate the issue of whether the [Texas] court lacked personal jurisdiction over her . . . is if the trial court [here] found that the issue was not fully and fairly litigated and finally decided in the [Texas] proceeding. [Dr. Walker] did not raise the issue of whether personal jurisdiction was fully and fairly litigated in the [Texas] proceeding in her [filings here in Georgia], she did not present evidence on that issue at trial, she did not ask the trial court to rule on that issue, and the trial court did not do so.

*Sentinel Acceptance v. Hodson Auto Sales & Leasing*, 45 SW3d 464, 469 (Mo. App. 2001). " 'Issues never raised at trial will not be considered for the first time on appeal. (Cit.)' [Cit.]" *Coweta County v. City of Senoia*, 275 Ga. 707, 709 (4) (573 SE2d 21) (2002). Dr.

Walker has not challenged at trial or on appeal the general enforceability of the forum selection clause which may itself have formed the basis for the Texas court's exercise of personal jurisdiction over her. Instead, she has consistently challenged only the applicability of that clause to the Georgia action. In particular, she contends that the forum selection clause is a contractual term that does not apply to claims pursuant to Georgia statutes, such as the FBPA. However, the Texas court specifically ruled in its declaratory judgment that even a Georgia FBPA claim is subject to the forum selection clause.

Dr. Walker argues that the Texas judgment does not go to the merits of her FBPA claim and that it is contrary to the public policy of this state. In the first place, however, there is no public policy exception to the Full Faith and Credit Clause. "A valid judgment of a sister state must be accorded full faith and credit 'even though such a judgment could not have been obtained in our own courts because the underlying contract is void as against the state's public policy.' [Cits.]" *Boyer v. Korsunsky, Frank, Erickson Architects*, 191 Ga. App. 549, 550 (382 SE2d 362) (1989). See also *Baker v. Gen. Motors Corp.*, 522 U. S. 222, 233 (II) (A) (118 SC 657, 139 LE2d 580) (1998) (public policy can guide determination of law applicable to a controversy, but "no roving 'public policy exception' to the full faith and credit due *judgments*" (emphasis in original)); *Cannon v. Cannon*, 244 Ga. 299 (260 SE2d 19) (1979). Furthermore, the Texas judgment does go to the merits of, and adversely controls, Dr. Walker's claim that the forum selection clause is inapplicable to an FBPA claim. Therefore, she is barred by the Texas judgment from filing an FBPA claim against AmeriSciences in this state, and a Georgia court cannot make its own determination regarding whether the forum selection clause precludes the filing of an FBPA claim in Georgia.

2. However, this conclusion does not resolve the question of whether the State Court of Gwinnett County had personal jurisdiction over the individual defendants. See *Keeton v. Hustler Magazine*, 465 U. S. 770, 781, fn. 13 (104 SC 1473, 79 LE2d 790) (1984); *Apparel Resources Intl. v. Amersig Southeast*, 215 Ga. App. 483, 485 (1) (451 SE2d 113) (1994). Therefore, we proceed to that issue next. Even though the Texas default judgment must be given full faith and credit, we still have to address the issues involving the individual defendants considered in Division 3 of the Court of Appeals' opinion, but only those issues, since the trial court has not yet addressed any other basis for dismissing the individual defendants.

Appellants contend, and the trial court held, that a nonresident individual cannot be subject to personal jurisdiction in Georgia courts based solely upon acts taken in his capacity as a corporate officer. This contention describes what is commonly known as the "fiduciary shield" doctrine, which has come under increasing criti-

cism and been rejected by a number of courts. 3A William Meade Fletcher, *Fletcher Cyc. Corp.* § 1296.20; Sonja Larsen, Annotation, *Validity, construction, and application of "fiduciary shield" doctrine — modern cases*, 79 ALR5th 587 (2000); 21 CJS *Courts* § 67. Indeed, in light of *Calder v. Jones*, 465 U. S. 783, 790 (104 SC 1482, 79 LE2d 804) (1984) and *Keeton v. Hustler Magazine*, supra, there is now "a broad consensus among federal courts . . . that due process does not require the application of the fiduciary shield doctrine. [Cits.]" *Simplex Healthcare v. Marketlinkx Direct*, 761 FSupp.2d 726, 732 (II) (M.D. Tenn. 2011).

This Court has never addressed that doctrine. The Georgia Court of Appeals has twice construed this state's law in a manner consistent with the "fiduciary shield" rule. *Southern Electronics Distributors v. Anderson*, 232 Ga. App. 648, 650 (1) (502 SE2d 257) (1998); *Girard v. Weiss*, 160 Ga. App. 295, 298 (1) (287 SE2d 301) (1981). Those two cases have been followed three times in non-binding federal precedent. *Club Car v. Club Car (Quebec) Import*, 362 F3d 775, 784 (4) (11th Cir. 2004) (citing *Anderson*); *Canty v. Fry's Electronics*, 736 FSupp.2d 1352, 1360 (II) (B) (1) (c) (N.D. Ga. 2010) (citing *Girard*); *United States for Use and Benefit of WFI Ga. v. Gray Ins. Co.*, 701 FSupp.2d 1320, 1346 (V) (A) (N.D. Ga. 2010) (citing *Anderson, Girard*, and *Club Car*). However, both Court of Appeals cases, which constituted the precedent upon which the three federal cases were based, were decided *before* our decision in *Innovative Clinical & Consulting Services v. First Nat. Bank of Ames, Iowa*, 279 Ga. 672 (620 SE2d 352) (2005). In that case, we construed OCGA § 9-10-91 (1), which is the only portion of Georgia's long-arm statute on which Dr. Walker's complaint bases personal jurisdiction over the individual defendants, as follows:

That subsection authorizes a Georgia court to exercise personal jurisdiction over a nonresident who "(t)ransacts any business within" Georgia. As is the case with subsection (2), there are no explicit legislative limiting conditions on this language. Nothing in subsection (1) limits its application to contract cases, [cit.]; nothing in subsection (1) requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State. [Cit.] Although Georgia courts have engrafted these and other requirements onto subsection (1), such requirements conflict with the literal language of the statute. To be consistent with . . . the well-established rules of statutory interpretation that preclude judicial construction of plain and unambiguous statutory language, [cit.], we must give the same literal construction to subsection (1) of

OCGA § 9-10-91 that we give to the other subsections. Accordingly, under that literal construction, OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State. Of course, because this statutory language would expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process, we accordingly construe subsection (1) as reaching only "to the maximum extent permitted by procedural due process." [Cits.] We hereby overrule all prior cases that fail to accord the appropriate breadth to the construction of the "transacting any business" language of OCGA § 9-10-91 (1).

*Innovative Clinical & Consulting Services v. First Nat. Bank of Ames, Iowa*, supra at 675-676. Nothing in that statutory language "suggests that the Legislature intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long-arm jurisdiction for acts performed in a corporate capacity." *Kreutter v. McFadden Oil Corp.*, 522 NE2d 40, 46 (II) (A) (N.Y. 1988). We find that such special treatment is one of those requirements which has occasionally been engrafted onto OCGA § 9-10-91 (1) and which conflicts with its literal language. Thus, to the extent that they apply the "fiduciary shield" doctrine or its equivalent, the Georgia Court of Appeals cases of *Anderson* and *Girard* are hereby overruled, and the federal cases of *Club Car, Canty*, and *Gray Ins.* will not be followed.

The "fiduciary shield" rule is not "necessary as a matter of fairness. The equitable concerns which motivated development of the doctrine are amply protected by constitutional due process requisites . . . ." *Kreutter v. McFadden Oil Corp.*, supra. As the Supreme Court of the United States has held, jurisdiction over a corporate employee or officer "does not automatically follow from jurisdiction over the corporation . . . ." *Keeton v. Hustler Magazine*, supra. In this case, therefore, the contacts of the individual defendants with Georgia are not to be judged according to AmeriSciences' activities in this state. *Calder v. Jones*, supra. On the other hand, "[a]ny thought that the fiduciary shield doctrine is a principle pertinent to personal jurisdiction received a constitutional coup de grace administered by the U.S. Supreme Court in *Calder v. Jones*, [supra] . . . ." *McGowan Grain v. Sanburg*, 403 NW2d 340, 351 (Neb. 1987). See also *Kukui Gardens Corp. v. Holco Capital Group*, 664 FSupp.2d 1103, 1111 (I) (B) (1) (D. Hawaii 2008) ("in *Calder*, the Supreme Court effectively abolished the fiduciary shield doctrine").

In *Calder*, the Supreme Court specifically held that the prohibi-

tion on judging the contacts of individual defendants according to their employer's activities in the forum state did not prevent the exercise of jurisdiction over them based upon the fact that they were "primary *participants* in an alleged wrongdoing intentionally directed at a . . . resident [of the forum state] . . . ." (Emphasis supplied.) *Calder v. Jones*, supra. Indeed, on the very same day that *Calder* was decided, the Supreme Court interpreted that decision as follows: "In *Calder v. Jones*, [supra], we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton v. Hustler Magazine*, supra. The status of the individual defendants as employees or officers "does not somehow insulate them from jurisdiction." *Calder v. Jones*, supra. See also *Keeton v. Hustler Magazine*, supra.

Contrary to Appellants' argument, that status does not necessarily mean that the individual defendants did not purposefully avail themselves of the privilege of conducting activities in Georgia such that the minimum contacts mandated by constitutional due process were not present.

> Indeed, the Supreme Court has addressed the fiduciary shield doctrine . . . and held that it is constitutionally permissible to subject an individual participating in a transaction in a foreign State to long-arm jurisdiction even though his contacts with the forum were made in a corporate capacity (*Calder v. Jones*, . . . supra; *Keeton v. Hustler Mag.*, [supra]; [cit.]).

*Kreutter v. McFadden Oil Corp.*, supra. See also *McGowan Grain v. Sanburg*, supra at 351.

> While *Calder* indicates that a company's contacts with a forum that are independent of an individual employee's contacts with the same forum are not to be aggregated against the individual employee for purposes of the minimum-contacts analysis, it simultaneously indicates that for purposes of specific personal jurisdiction, the conduct in which the individual employees personally and actually engage as part of their employment duties does count against them in spite of the fact that they engaged in the activities as employees of a business entity.

*In re Teknek*, 354 B.R. 181, 194 (A) (1) (Bankr. N.D. Ill. 2006). In other words,

> [a]s the Supreme Court held in *Calder v. Jones*, employees of a corporation that is subject to the personal jurisdiction of

the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation. [Cit.] . . . Personal jurisdiction over [such an employee] would extend at least as far as matters relating to the activities of the . . . corporation[ ] in the forum in which he was a primary participant. [Cits.]

*Application to Enforce Administrative Subpoenas Duces Tecum of the Securities and Exchange Commission v. Knowles*, 87 F3d 413, 418 (II) (B) (10th Cir. 1996). This "primary participant" requirement is itself a sufficient constitutional due process protection of corporate employees and officers. It meets the mandate that

[e]ach defendant's contacts with the forum State must be assessed individually. . . . "The requirements of *International Shoe [Co. v. Washington*, 326 U. S. 310 (66 SC 154, 90 LE 95) (1945)] . . . must be met as to each defendant over whom a state court exercises jurisdiction[.]"

*Calder v. Jones*, supra. See also *Keeton v. Hustler Magazine*, supra; *Smith v. Smith*, 254 Ga. 450, 452 (3) (330 SE2d 706) (1985) (quoting *Calder*); 4 Ian C. Ballon, *E-Commerce and Internet Law* 53.04[7] (discussing *Calder* and *Keeton*). We also note that, in breach-of-contract cases, evaluation of minimum contacts may include examination of the individual officer's " 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.' [Cit.]" *Far West Capital v. Towne*, 46 F3d 1071, 1079 (10th Cir. 1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 478-479 (II) (B) (1) (105 SC 2174, 85 LE2d 528) (1985)). These protections are further amplified by other portions of this state's long-arm statute, such as subsection (3) of OCGA § 9-10-91, which does not confer jurisdiction "to the fullest extent permitted by constitutional due process. [Cit.]" *Innovative Clinical & Consulting Services v. First Nat. Bank of Ames, Iowa*, supra at 674. See also *Kreutter v. McFadden Oil Corp.*, supra. Like other courts and commentators, therefore, we conclude that both the "long-arm statute[ ] and constitutional fairness concerns adequately protect corporate employees [and officers] and . . . that the [fiduciary shield] doctrine unfairly prejudices plaintiffs who have valid claims against" those individuals who have acted in a corporate capacity in Georgia. Larsen, supra. See also *Kreutter v. McFadden Oil Corp.*, supra; *McGowan Grain v. Sanburg*, supra.

Our analysis is not altered by the status of the individual defendants as members of a limited liability company (LLC). As with

other corporate officers, those courts which follow the "fiduciary shield" rule either apply it to members of an LLC or make an exception to avoid injustice. Carter G. Bishop & Daniel S. Kleinberger, *Limited Liab. Co.* ¶ 6.07 (2009). See also *Kreutter v. McFadden Oil Corp.*, supra. Accordingly, for the same reasons that we reject the "fiduciary shield" doctrine with respect to other corporate officers, we also reject its application to members of an LLC but caution that, "[t]o be subject to the forum court's jurisdiction, a member's own activities must satisfy the minimum contacts test." Bishop, supra.

Accordingly, we now turn to the question of whether the individual defendants here "were primary participants in the activities forming the basis of jurisdiction over" AmeriSciences. *Application to Enforce Administrative Subpoenas Duces Tecum of the Securities and Exchange Commission v. Knowles*, supra. But for the forum selection clause in AmeriSciences' contract and the related Texas default judgment which must be given full faith and credit, the alleged activities which would form the basis for jurisdiction over AmeriSciences are its transaction of any business within this state pursuant to OCGA § 9-10-91 (1). Unlike subsections (2) and (3), that subsection obviously does not require the commission of any tort and, conversely, is not limited to contract cases. *Innovative Clinical & Consulting Services v. First Nat. Bank of Ames, Iowa*, supra at 675. However, subsection (1) is limited by due process considerations. Therefore,

> "[j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." [Cit.]

*Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517-518 (1) (631 SE2d 734) (2006). See also *Vibratech v. Frost*, 291 Ga. App. 133, 137 (1) (a) (661 SE2d 185) (2008).

In her complaint, Dr. Walker alleges that each of the three individual defendants, who were founding members of the LLC, including the president and chief executive officer, the operating chairman, and the general counsel, had "directly facilitated . . . AmeriSciences' transaction of business in Georgia resulting in the unlawful conduct set forth" in the complaint and had "been physically present in Georgia facilitating the unlawful conduct." These allegations support a finding that the individual defendants were "primary

participants" in AmeriSciences' transaction of business within this state, that " 'the cause of action arises from or is connected with such act or transaction,' " and that the "minimum contacts" test is therefore met. *Aero Toy Store v. Grieves*, supra at 517-518 (1). Moreover, although the physical presence of the nonresident in Georgia is no longer required after *Innovative* for purposes of OCGA § 9-10-91 (1), it is certainly a factor which supports a finding of the actual transaction of business in this state and the exercise of personal jurisdiction on that basis. See *AeroGlobal Capital Mgmt. v. Cirrus Indus.*, 871 A2d 428, 440 (II) (A) (Del. 2005); *D.S. America (East) v. Elmendorf Grafica*, 654 NE2d 472, 477 (Ill. App. 1995); *Environmental Ventures v. Alda Services Corp.*, 868 P2d 540, 544 (Kan. App. 1994).

In response to Dr. Walker's requests for admissions, Appellants admitted that each of the individual defendants had been physically present in Georgia in furtherance of AmeriSciences' business activities, subject to the objection that the request was not calculated to lead to admissible or other discoverable evidence, because a nonresident individual cannot be subject to personal jurisdiction based solely upon acts in this state in his corporate capacity. By these responses, Appellants relied on the "fiduciary shield" doctrine or its equivalent. They presented no other evidence, nor did they even attempt to present the requisite " 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. [Cits.]" *Diamond Crystal Brands v. Food Movers Intl.*, 593 F3d 1249, 1267 (V) (11th Cir. 2010). Instead, Appellants filed a motion to dismiss based on Dr. Walker's failure to allege that the individual defendants had any contacts with Georgia separate and distinct from their contacts, if any, as corporate officers of AmeriSciences.

Having moved to dismiss for lack of personal jurisdiction, Appellants had the burden of proving such lack of jurisdiction. *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990). "To demonstrate that the court lacks jurisdiction, defendant may raise matters not contained in the pleadings." *Beasley v. Beasley*, supra. However, Appellants chose not to raise matters outside the pleadings. Since they relied solely on the corporate capacities in which the individual defendants transacted business in Georgia and did not present any evidence controverting the allegations of the complaint, those allegations could be relied on by Dr. Walker and must be accepted as true by this Court. *Beasley v. Beasley*, supra. Because the "fiduciary shield" doctrine does not apply in this state, we find that the allegations of the complaint were sufficient to withstand Appellants' attack on the trial court's jurisdiction over the individual defendants on the ground that they acted in their corporate capacities.

3. Appellants further contend that, even if the trial court had personal jurisdiction over the individual defendants, they could not be personally liable for violations of the SBOA, because none of them was a "seller" within the meaning of OCGA § 10-1-410 (10). Under that statute, the term " '[s]eller' means any multilevel distribution company or it means any person who offers to sell to individuals any business opportunity, either directly or through any agent." OCGA § 10-1-410 (10). Although there is no allegation or proof that Ameri-Sciences offered to sell any business opportunity, the complaint alleged and AmeriSciences admitted that it is a "multilevel distribution company" as defined in the SBOA. That term is defined to include "any person" who "sells, distributes, or supplies for a valuable consideration goods or services through independent agents, contractors, or distributors at different levels" under certain specified conditions. OCGA § 10-1-410 (6). The term "person" means "any individual, corporation, . . . or other entity and shall include any other person that has a substantive interest in or effectively controls such person as well as the individual officers . . . or other individuals in control of the activities of such person." OCGA § 10-1-410 (8).

Appellants have admitted that each of the individual defendants was a founding member of AmeriSciences at all times and that, when Dr. Walker entered into the agreement with AmeriSciences, one individual defendant was the Chief Executive Officer, another was Operating Chairman, and the third was General Counsel. Therefore, we find that the individual defendants were themselves "sellers" within the meaning of the SBOA, in that they were individuals who had a substantive interest in a multilevel distribution company or effectively controlled such company or its activities. See *Hornsby v. Phillips*, 190 Ga. App. 335, 338 (2) (378 SE2d 870) (1989) (finding that defendant was a "seller" under the SBOA because "he was an individual who had a substantive interest in a corporation which offered to sell a business opportunity"). Accordingly, pursuant to OCGA §§ 10-1-399 (a) and 10-1-417 (b), each individual defendant is subject to personal liability for any violation of the SBOA which he has committed and which is proved by Dr. Walker.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED NOVEMBER 30, 2011 —
RECONSIDERATION DENIED DECEMBER 8, 2011.

*Webb, Tanner & Powell, Robert J. Wilson, Owens, Clary & Aiken, Dana M. Campbell*, for appellant.

*Samuel S. Olens, Attorney General, Amy Meyer Burns, Assistant Attorney General, Henry A. Turner*, for appellee.