**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 15, 2013**

# In the Court of Appeals of Georgia

A13A0957. PENSO HOLDINGS, INC. et al. v. CLEVELAND.

PHIPPS, Chief Judge.

Melissa Cleveland, individually and as class representative for others similarly situated, sued Penso Holdings, Inc. d/b/a Capital Debt Settlement, Accelerated Debt Management Group, Inc., and CDS Client Services, Inc. (collectively "Penso"), claiming that services Penso had provided under a written agreement violated Georgia statutes specifically regulating the business of debt adjusting as set forth in OCGA § 18-5-1 et. seq. Penso moved to stay the litigation and compel arbitration, "pursuant to and in accordance with the terms of the Debt Settlement Agreement." The trial court denied the motion, but issued a certificate of immediate review. Penso sought an interlocutory appeal, which this court granted. Because the arbitration

clause in the agreement showed that the parties intended to submit the type of claim in dispute to an arbitrator, we reverse.

The standard of review from the denial of a motion to compel arbitration is whether the trial court was correct as a matter of law. Further, the construction of a contract is a question of law for the court that is subject to de novo review. Where contract language is unambiguous, construction is unnecessary and the court simply enforces the contract according to its clear terms. Contract language is unambiguous if it is capable of only one reasonable interpretation.[1]

In this case, the debt settlement agreement provided, among other things, the following:

*Arbitration.* All disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration in accordance with the rules of American Arbitration Association within 30 days from the dispute date or claim. Any arbitration proceedings brought by Client shall take place in Rockingham County, New Hampshire. . . . The prevailing party in any action or proceeding related to this Agreement shall be entitled to recover reasonable legal fees and costs, including attorney's fees which may be incurred.

---

[1] *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005) (footnotes omitted).

2

In opposition to Penso's motion to compel arbitration, Cleveland argued that her "cause of action arises solely from the Georgia Debt Adjustment Act.[2] This is not a cause of action that is a result of a breach of the Agreement, nor is it subject to [Penso's] attempted enforcement of the arbitration clause. The cause of action exists independently of the alleged contract between the parties." Cleveland asserted that this court, in *Attaway v. Tom's Auto Sales*[3] and *Hornsby v. Phillips*,[4] held that "a defendant's contractual defenses cannot contravene the protection provided by Georgia's consumer statutes." In denying Penso's motion to compel arbitration, the trial court, citing *Attaway* and *Hornsby*, found that "The Georgia Court of Appeals has upheld citizens' rights to bring suits with statutory merit regardless of any contractual defenses." The holdings of these cases do not apply, however, to the facts of this case.

In *Attaway*, a purchaser who had bought a vehicle from an automobile dealership filed suit against the dealership, alleging that the dealership, in violation

---

[2] Notably, none of the provisions of the debt adjustment statutes are designated collectively as an "Act."

[3] 144 Ga. App. 813 (242 SE2d 740) (1978).

[4] 190 Ga. App. 335 (378 SE2d 870) (1989).

of the Fair Business Practices Act ("FBPA"), made certain harmful misrepresentations to the purchaser to induce him to purchase the vehicle.[5] The purchaser also sought recovery on the basis of breach of an express warranty and fraudulent misrepresentations.[6] The dealership denied the material allegations of the complaint, denied that it had violated the FBPA, and moved for summary judgment, attaching to the motion an affidavit executed by the dealership's president and a copy of the sales contract, purportedly controverting some of the alleged misrepresentations.[7] After a hearing, the trial court granted the dealership's summary judgment motion.

In *Attaway*, the purchaser did not contest, on appeal, the dealership's argument that the language of the contract prohibited him from recovering on the grounds of express or implied warranty, or on the grounds of any alleged fraudulent misrepresentations. The purchaser, however, challenged the trial court's grant of summary judgment on his claim for recovery under the FBPA.[8] This court reversed

[5] *Attaway*, supra.

[6] Id.

[7] Id. at 814.

[8] Id.

4

the grant of summary judgment to the dealership, holding: "We reach the conclusion from a reading of the [FBPA] that although the plaintiff might not be able to rescind the contract or otherwise set it aside, the [FBPA] itself is in no way tied to contractual rights and is wholly self-sustaining."[9] This court further held: "From an overview of this [FBPA], we find that there is thereby created a separate and distinct cause of action under its provisions. A consumer who is damaged thereby has an independent right to recover under the Act, regardless of any other theory of recovery."[10]

In reaching these conclusions, this court noted that the statutes promulgating the FBPA contained a provision stating the purpose of the FBPA; a provision declaring unlawful, unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce; a provision granting a right to any person injured or damaged as a result of acts or practices committed in violation of the FBPA to bring an action against the person or persons engaged in such unlawful acts or practices; and a provision that, notwithstanding any

---

[9] Id. at 814, 816.

[10] Id. at 815.

other provision of law, the operation of the FBPA could not be limited "by contract, agreement or otherwise."[11]

In *Hornsby*, a seller who was sued for allegedly violating the Georgia Sale of Business Opportunities Act ("SBOA"), maintained, among other things, that a directed verdict in his favor was warranted because the buyer's claims were time-barred pursuant to a provision of the sales contract.[12] Citing *Attaway*, this court stated that it did not reach the seller's argument, because "contractual defenses are inapplicable when an action is based not on the contract but solely on an alleged violation of the [SOBA]."[13]

In this case, there is no provision in the debt adjusting statutes, as there is in the FBPA, providing that operation of said statutes could not be limited by contract, agreement, or otherwise. The debt settlement agreement pertinently provided that "[a]ll disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration." Cleveland cites no authority (and we have found

---

[11] Id. (citation and punctuation omitted); see OCGA § § 10-1-390; 10-1-391; 10-1-393 (a), (b), (c); 10-1-399 (a).

[12] *Hornsby*, supra at 340 (4).

[13] Id.

6

none) for the proposition that arbitration constitutes a "contractual defense." Arbitration is a "process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard."[14] The Supreme Court of Georgia has acknowledged, "the purpose of arbitration is to provide a swift and inexpensive means for parties to resolve their disputes."[15]

Although Penso's reliance upon *Wells Fargo Auto Fin. v. Wright*[16] is misplaced, the agreement in this case nevertheless mandates that Cleveland's debt adjusting statutes claim be submitted to arbitration. In *Wells Fargo Auto Fin.*, an arbitration provision mandated that the parties to a contract for the sale of a vehicle submit to arbitration "all claims, demands, disputes, or controversies of every kind or nature that may arise between [the parties] concerning . . . *any* . . . *aspect*[] of the vehicle and its sale, lease or financing. . . ."[17] Thus, the buyer's claim that the business

---

[14] Black's Law Dictionary, 70 (6th ed. 1991).

[15] *Bryan County v. Yates Paving & Grading Co.*, 281 Ga. 361, 363 (638 SE2d 302) (2006) (citation omitted).

[16] 304 Ga. App. 621 (698 SE2d 17) (2010).

[17] Id. at 622 (1) (emphasis supplied).

7

to which his contract was assigned had engaged in deceptive practices by requiring him to continue to pay for the vehicle after he discovered that the vehicle had been involved in an accident before he purchased it, fit within categories of claims the agreement indicated would be submitted to arbitration.[18]

In this case, however, the arbitration provision was not as broad in scope as the arbitration provision in *Wells Fargo Auto Fin.*; here, the provision mandated the arbitration of all disputes and claims between the parties "related to" the agreement. Therefore, the question becomes whether Cleveland's claim alleging that Penso violated the debt adjusting statutes related to the agreement. "The words in a contract generally bear their usual and common signification,[[19]] and dictionaries may supply the plain and ordinary meaning of a word."[20] Black's Law Dictionary defines the term "related" as "[s]tanding in relation; connected; allied; akin."[21]

---

[18] Id. at 621, 623 (1).

[19] OCGA § 13-2-2 (2).

[20] *Harkins v. CA 14th Investors*, 247 Ga. App. 549, 550 (544 SE2d 744) (2001) (citation and punctuation omitted).

[21] Black's Law Dictionary, 892 (6th ed. 1991); see *Harkins*, supra at 550-551.

8

Under the section of her complaint entitled "Claims," Cleveland stated "Count I - Violation of Georgia's Debt Adjustment Act." That section of the complaint pertinently stated as follows:

> Defendants *contracted for* and accepted from the named Plaintiff, and the Plaintiff Class Members, a charge, fee, contribution, or combination thereof in an amount in excess of 7.5% of the amount they paid monthly for distribution to their creditors. Defendants' conduct violates the provisions of the Georgia Debt Adjustment Act.[22]

In accordance with the definition of "related" and pursuant to the allegations of the complaint, Cleveland's claim that Penso violated Georgia statutes regulating the business of debt adjusting was connected to the debt settlement agreement. And Cleveland's attempts to void the arbitration provision by challenging the validity of other provisions of the arbitration clause are unavailing, as the agreement contained a severability clause, providing that "If any of the above provisions are held to be invalid or unenforceable, the remaining provisions will not be affected."[23]

---

[22] (Emphasis supplied.)

[23] See generally *Bulloch South v. Gosai*, 250 Ga. App. 170, 175 (1) (b) (550 SE2d 750) (2001); *Jackson v. Cintas Corp.*, 425 F3d 1313, 1316-1317 (III) (B) (11th Cir. 2005); OCGA § 13-1-8 (a) and (b) ("A contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder. The character of

9

"[A] provision in a written contract to submit any controversy thereafter arising to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award."[24] "As with any other contract, the parties' intentions control. Accordingly, we find that the trial court erred when it denied [Penso's] motion to compel [arbitration]."[25]

*Judgment reversed. Ellington, P. J., concurs.  Branch, J., concurs in judgment only.*

---

the contract in such case is determined by the intention of the parties.").

[24] *D. S. Ameri Constr. Corp.*, supra at 827 (punctuation and footnote omitted); OCGA § 9-9-3.

[25] *Wells Fargo Auto Fin.*, supra at 623 (1); see *D. S. Ameri Constr. Corp.*, supra at 826-827.

10