IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 18, 2024 Session

## WELLS FARGO BANK NATIONAL ASSOCIATION v. MARK A. SEARCY

**Appeal from the Chancery Court for Sevier County**
**No. 23-3-058    James H. Ripley, Chancellor**

———————————————————

**No. E2024-00238-COA-R3-CV**

———————————————————

A bank obtained a money judgment in South Carolina in 2010.  The judgment debtor moved to North Carolina, and the bank domesticated the South Carolina judgment in North Carolina, a state that treats enrolled judgments as new North Carolina judgments.  The judgment debtor moved to Tennessee, and in 2023, the bank filed a petition to enroll the North Carolina judgment in Tennessee.  The judgment debtor objected, arguing that the original South Carolina judgment had expired.  The bank responded that it was not seeking to enroll the South Carolina judgment, but instead the North Carolina judgment.  The trial court enrolled the North Carolina judgment.  The judgment debtor appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

E. Richards Brabham, III, and Jeffrey M. Cranford, Knoxville, Tennessee, for the appellant, Mark A. Searcy.

Erno D. Lindner, Chattanooga, Tennessee, for the appellee, Wells Fargo Bank National Association.

### OPINION

#### I.

In 2010, Wells Fargo[1] obtained a monetary judgment against Mark Searcy in South

———————————————

[1] The original judgment was obtained by Wachovia Bank National Association, which later merged with Wells Fargo.  The parties do not dispute that Wells Fargo is the proper party.

Carolina. Mr. Searcy apparently, subsequently, moved to North Carolina. Wells Fargo successfully domesticated its South Carolina judgment in North Carolina. On November 10, 2014, a North Carolina court granted a motion to enforce the judgment. At some later point, Mr. Searcy apparently moved to Tennessee.

On March 10, 2023, Wells Fargo filed an action to enroll the North Carolina judgment in Tennessee. Mr. Searcy objected to the enrollment in Tennessee, filing a motion to dismiss. Mr. Searcy argued that because the original judgment, the South Carolina judgment, was only enforceable for 10 years under South Carolina law, Wells Fargo should not be permitted to enroll the judgment in Tennessee since that time had passed. In response, Wells Fargo argued that it was not attempting to enroll the South Carolina judgment; rather, Wells Fargo indicated that it was seeking to enroll the North Carolina judgment. Further, Wells Fargo explained that North Carolina treats a domesticated judgment as a new judgment with its own new 10-year enforcement period, making the enrollment action timely. Mr. Searcy did not dispute Wells Fargo's characterization of North Carolina law but insisted that North Carolina law was irrelevant because the original judgment was issued in South Carolina. After a hearing, the trial court denied Mr. Searcy's motion to dismiss and enrolled the North Carolina judgment in Tennessee. Mr. Searcy appealed, arguing that the trial court erred in denying his motion to dismiss and enrolling the North Carolina judgment.

II.

The question of whether to grant full faith and credit to a foreign judgment is a question of law that we review de novo. *Cap. Partners Network OT, Inc. v. TNG Contractors, LLC*, 622 S.W.3d 227, 231 (Tenn. Ct. App. 2020) (citing *Guseinov v. Synergy Ventures, Inc.*, 467 S.W.3d 920, 924 (Tenn. Ct. App. 2014)). Similarly, we review a trial court's legal conclusions related to its decision to grant or deny a motion to dismiss de novo. *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).

III.

Section 1 of Article IV of the United States Constitution provides that "Full faith and credit shall be given in each state to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof." As interpreted by the United States Supreme Court, how demanding the requirements of the Full Faith and Credit Clause are vary between judgments (judicial proceedings) and laws (public acts). *See*, *e.g.*, *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998) ("Our precedent differentiates the credit owed to laws (legislative measures and common law) and to judgments."); Emily J. Sack, *Domestic Violence Across State Lines: The Full Faith and Credit Clause, Congressional Power, and Interstate Enforcement of Protection*

*Orders*, 98 Nw. U. L. Rev. 827, 864 (2004) (noting that "the [United States] Supreme Court has consistently treated 'public acts' or laws differently than 'judicial proceedings' or judgments in its full faith and credit jurisprudence"); *see also Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 494 (2003) ("Whereas the full faith and credit command 'is exacting' with respect to '[a] final judgment . . .,'' it is less demanding with respect to choice of laws." (quoting *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998))), *aff'd on other grounds*, *Franchise Tax Bd. of Cal. v. Hyatt*, 578 U.S. 171 (2016), *aff'd on other grounds*, *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230 (2019). .

Addressing the Full Faith and Credit Clause as to its more stringent application for judgments, the United States Supreme Court observed the following:

> With respect to judgments, "the full faith and credit obligation is exacting."  "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land."  A State may not disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits. On the contrary, "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based."

*V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (internal citations omitted) (first quoting *Baker*, 522 U.S. at 233, then quoting *Milliken v. Meyer*, 311 U.S. 457, 462 (1940)).)  "As one means of fulfilling this obligation, Tennessee enacted the Uniform Enforcement of Foreign Judgments Act ("UEFJA").  Tennessee Code Annotated sections 26-6-101 to -109." *New v. Dumitrache*, 604 S.W.3d 1, 18 (Tenn. 2020).

In their briefing, both parties advance the law of another jurisdiction as dispositive in determining whether the chancery court properly enrolled the judgment.  Mr. Searcy argues for South Carolina law while Wells Fargo argues for North Carolina law.

At the epicenter of Mr. Searcy's argument is a South Carolina Statute, which states:

> Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period, without any renewal or renewals thereof, and this whether any return may or may not have been made during such period on such executions.

S.C. Code Ann. § 15-39-30.  The South Carolina Supreme Court interpreted this language to be restrictive, explaining that the legislature intended for the passing of 10 years, without

any ability to extend, to "completely destroy any right of action" upon such judgment. *Gordon v. Lancaster*, 823 S.E.2d 173, 176 (S.C. 2018) (citing *Hardee v. Lynch*, 46 S.E.2d 179, 183 (S.C. 1948)). In South Carolina, a judgment lien becomes "utterly extinguish[ed]" after 10 years, even if a suit to enforce such judgment is brought within 10 years. *Id.* (quoting *Garrison v. Owens*, 189 S.E.2d 31, 33 (S.C. 1972). Under Mr. Searcy's understanding, because the foreign judgment that Wells Fargo sought to enroll derived originally from South Carolina, and not North Carolina, the right to enforce the original judgment expired in 2020 and could not be renewed. Mr. Searcy contends that allowing North Carolina to extend the enforcement window for the South Carolina judgment was renewing the judgment beyond that which South Carolina would have originally allowed, thus giving the judgment greater effect than it would have had in South Carolina. Therefore, he argues that it was an error for the Sevier County Chancery Court to enroll the judgment.

Wells Fargo responds noting that it did not file a petition to enroll the South Carolina judgment, but rather, the North Carolina judgment. Citing *Nielson v. Schmoke*, 863 S.E.2d 652 (N.C. Ct. App. 2021), among other authorities, Wells Fargo notes that under North Carolina law it is clear that when a foreign judgment is properly enrolled under North Carolina's version of the Uniform Enforcement of Foreign Judgments Act (UEFJA) it becomes a "new North Carolina judgment." *See Nielson*, 863 S.E.2d at 659. Under North Carolina law, the new judgment has a new 10-year enforcement period provided by North Carolina General Statute sections 1-234 and 1-306. *Id.* Under Wells Fargo's understanding, it sought to enroll the new North Carolina judgment, and, accordingly, the South Carolina limitations are immaterial.

Mr. Searcy does not dispute Wells Fargo's understanding of North Carolina law, and Wells Fargo does not dispute Mr. Searcy's understanding of South Carolina law. Both parties insist that the law of the jurisdiction that they each advance is determinative, respectively the original judgment jurisdiction (South Carolina) for Mr. Searcy and the new judgment jurisdiction (North Carolina) for Wells Fargo. Both in their briefs and during oral argument, the parties' argumentation is decidedly lean on its exploration of Tennessee law. In response to questioning at oral argument, both parties candidly agreed that this is as a result of a dearth of Tennessee law addressing this issue.[2]

---

[2]

> Judge's Question: Counsel, there is a very interesting discussion in the briefing in this case. South Carolina law provides this. North Carolina provides this. There seems to be a little bit of a gap in terms of how Tennessee law addresses these subject matters. Is Tennessee law essentially silent on these issues? Are we in entirely new territory here with this case?

> Counsel for Mr. Searcy: I believe that it is. I have not found any cases in Tennessee that address this specific issue. I mean obviously there are choice of law issues in other matters, but in this case, I have not found a case that determines which law. . . .

- 4 -

The issue set forth in Mr. Searcy's statement of the issues is as follows: "The Trial Court's Judgment Denying Defendant/Appellant Mark Searcy's Objection and Motion to Dismiss the Filing of the Plaintiff/Appellee's Foreign Judgment and the Trial Court's Enrollment of Said Judgment was not Supported by Material Evidence and was Contrary to the Applicable Law." While the parties' briefing on appeal repeatedly addresses enforcement, the actual argumentation is more precisely ultimately aimed at the question of enrollment rather than stating a post-enrollment challenge to the enforcement of an enrolled judgment. The chancery court's order provided for enrollment of the order not its enforcement, and it is that order that is being appealed. Therefore, the scope of our review in this appeal is quite narrow. We have not been tasked with addressing whether Wells Fargo can enforce its judgment against Mr. Searcy post-enrollment, and we do not opine herein on that question. The issue before this court is limited to whether the judgment was properly enrolled.

Though closely related, enrollment and enforcement of a foreign judgment are not synonymous. Regarding foreign judgments, the Tennessee Supreme Court has indicated that there are "two distinct steps: (1) enrollment and (2) enforcement." *New*, 604 S.W.3d at 18; *see also Cadlerock, LLC v. Weber*, No. E2010-02137-COA-R3-CV, 2011 WL 2569751, at *3 (Tenn. Ct. App. June 30, 2011) (crediting a party's view that "domesticating a foreign judgment is a two-step process that includes enrollment and enforcement" based on *Baumann v. Williams*, No. M2006-000962-COA-R3-CV, 2007 WL 3375365, at *2 (Tenn. Ct. App. Nov. 13, 2007)); Restatement (Second) of Conflict of Laws, ch. 5, topic 2, intro. cmt. (Am. Law. Inst. 1971) ("A foreign judgment is enforced when, in addition to being recognized, a party is given the affirmative relief to which the judgment entitles him. Recognition of a judgment is a condition precedent to its enforcement."). Addressing the process, this court has observed that "[t]he two-step process consists of enrollment first and then enforcement." *Guseinov*, 467 S.W.3d at 925–26. Writing for the court in *Baumann v. Williams*, then-Judge Koch explained the connection between enrollment and enforcement as follows:

While the Uniform Enforcement of Foreign Judgments Act creates a

---

Judge's Question: I want to ask you the same question I asked opposing counsel which is again I thought the briefing was very interesting in terms of South Carolina law, North Carolina law, but again sort of a paucity of how Tennessee has viewed these type of questions. Do you agree with opposing counsel that there is largely silence in Tennessee in terms of how Tennessee has tackled -- not how North Carolina and I understand the fight South Carolina should apply, North Carolina should apply, not how Tennessee -- but in terms of how Tennessee law has attacked choice of law questions. Is it fair to say it that at the very least it is thin?

Counsel for Wells Fargo: It is very thin.

registration process that leads to enforcement, thereby tightly binding registration and enforcement, it does not eliminate the two-step nature of the process. In this vein, Tennessee courts have repeatedly recognized that enrolled or registered judgments remain subject to attack. This court has recently observed that "[o]nce a foreign judgment has been enrolled, it has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of record in Tennessee and may be enforced or satisfied in a like manner." *First State Bank of Holly Springs, Miss. v. Wyssbrod*, 124 S.W.3d 566, 573 (Tenn. Ct. App. 2003).

*Baumann*, 2007 WL 3375365, at *2 (footnotes omitted). Given this framework, "[a] decision to enroll a foreign judgment does not equate into a determination that the judgment is enforceable." *Cadlerock, LLC*, 2011 WL 2569751, at *3; *Baumann*, 2007 WL 3375365, at *2 ("Permitting the enrollment of . . . [a] judgment is not a determination that it is enforceable.").

The Tennessee Supreme Court has observed that "[t]he requirements for enrollment are straightforward." *New*, 604 S.W.3d at 18. The state high court explained the process as follows:

> Enrollment requires filing "[a] copy of any foreign judgment authenticated in accordance with the acts of [C]ongress or the statutes of this state . . . in the office of the clerk of any circuit or chancery court of this state." [Tenn. Code Ann.] § 26-6-104(a). "The clerk shall treat the foreign judgment in the same manner as a judgment of a court of record of this state." *Id*. § 26-6-104(b). "A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record of this state and may be enforced or satisfied in like manner." *Id*. § 26-6-104(c).

*New*, 604 S.W.3d at 19.

Tennessee courts have recognized limitations on enrollment of judgments from sister states based upon a lack of personal or subject matter jurisdiction and based upon fraud.[3] *Capital Partners Network OT, Inc.*, 622 S.W.3d at 232; *Guseinov*, 467 S.W.3d at

---

[3] Tennessee courts have also noted public policy as a limitation on full faith and credit for judgments from sister state courts. Addressing the Full Faith and Credit Clause, the United States Supreme Court stated in *Baker by Thomas v. General Motors Corporation* that "[a] court may be guided by the forum State's 'public policy' in determining the law applicable to a controversy. But our decisions support no roving 'public policy exception' to the full faith and credit due judgments." *Baker by Thomas*, 522 U.S. at 233. State courts have noted this decision's impact on public policy as an exception to affording full faith and credit to a judgment of a sister state court. *See*, *e.g.*, *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217,

925; *Trustmark Nat. Bank v. Miller*, 209 S.W.3d 54, 57 (Tenn. Ct. App. 2006). An enrollment of a judgment reflects that the judgment has been "properly authenticated as a valid judgment from a sister state." *Cadlerock, LLC*, 2012 WL 6101425, at *3 ("Once enrolled, a foreign judgment remains 'subject to attack' because enrollment of a judgment merely 'reflects a conclusion that the document has been properly authenticated as a valid judgment from a sister state.'"); *Baumann*, 2007 WL 3375365, at *2 ("Permitting the enrollment of the . . . judgment is not a determination that it is enforceable . . . . Rather, the decision to allow enrollment reflects a conclusion that the document has been properly authenticated as a valid judgment from a sister state."); *see also Guseinov*, 467 S.W.3d at 926–27. "A party who seeks to prevent the enrollment of a foreign judgment in Tennessee carries a 'stern and heavy' burden." *Guseinov*, 467 S.W.3d at 925; *see also*, *e.g.*, *Mr. Appliance, LLC v. Appliance Servs. of Tennessee, LLC*, No. M2020-00456-COA-R3-CV, 2020 WL 7022748, at *3 (Tenn. Ct. App. Nov. 30, 2020).

From the record before us, there is no showing that the North Carolina state courts in 2014 lacked personal jurisdiction over Mr. Searcy or subject matter jurisdiction related to domestication of the South Carolina judgment. There is also no assertion of fraud. Regarding a new time frame resulting from the enrollment of a foreign judgment, while there is some inconsistency among state court decisions, "[i]t appears . . . that the substantial weight of authority holds that the filing of a foreign judgment triggers a new limitations period." *Czajka v. Holt Graphic Arts, Inc.*, 310 A.3d 1051, 1055 (D.C. 2024); *c.f. Oceanics Schs., Inc. v. Barbour*, 112 S.W.3d 135, 142 (Tenn. Ct. App. 2003) (observing in a case concerning an enrolled foreign judgment, "[i]f the action brought by the plaintiff in the instant case is to be treated as an action on that judgment, then the plaintiff would have had ten years from the date of entry of the domesticated judgment to bring such an action"). We need not, however, weigh in on this question. Mr. Searcy, who bears a stern and heavy burden in seeking to prevent enrollment, does not dispute that under North Carolina law the 2014 order of the North Carolina state court clearly constituted a new judgment with its own new ten-year period for enforcement. His argument is essentially

---

1222 (Fla. 2017) (stating that "the United States Supreme Court has made it clear that there is no public policy exception to the full faith and credit due final judgments of a sister state"); *Amerireach.com, LLC v. Walker*, 719 S.E.2d 489, 492 (Ga. 2011) (addressing a challenge to a Texas judgment in Georgia courts by observing "there is no public policy exception to the Full Faith and Credit Clause"); *In re Senior Health Ins. Co. of Pa.*, 310 A.3d 26, 40–41 (Pa. 2024) (concluding that "while the Full Faith and Credit Clause forbids a court from applying public policy considerations of its own state to avoid recognizing the judgment of a court of a sister state, a court is not barred by this constitutional provision from following the public policy embodied in the statutes of its own state when determining which law to apply in adjudicating a particular controversy"). This court, noting the *Baker by Thomas* decision and the existence of post-*Baker by Thomas* decisions of this court referencing a public policy exception, conducted a review of Tennessee case law which "suggests an accord, in practice, with the *Baker* distinction between full faith and credit with respect to judgments as opposed to laws." *Cap. Partners Network OT, Inc.*, 622 S.W.3d at 235. Here, Mr. Searcy did not argue that a public policy exception should apply as a bar to the enrollment of the North Carolina judgment.

that this was error. If rendering a judgment by a North Carolina court in domesticating an underlying South Carolina judgment in such a manner as to create a new judgment with a new time period was error, that was error that needed to be addressed in the North Carolina courts in challenging the domestication of the South Carolina judgment.

The Sevier County Chancery Court was presented with the judgment of a North Carolina court that under North Carolina law is a new order with a new 10-year enforcement period. The Sevier County Chancery Court properly gave that judgment full faith and credit allowing for its enrollment. We note that our decision does not prevent Mr. Searcy from raising any proper challenge to the enforcement of this enrolled judgment.

IV.

For these reasons, we affirm the judgment of the Chancery Court for Sevier County. Costs of the appeal are taxed to the appellant, Mark A. Searcy, for which execution may issue if necessary.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE